## VAN VLEET *vs.* SLAUSON.

O. conveyed to V. his real estate by an absolute deed, and his personal property by a bill of sale. At the same time V. executed an agreement by which he covenanted with O. to take the property and pay certain debts of O. first, and other debts in proportion to the amount of funds realized from a sale of the property, and remaining after paying certain preferred debts. Nothing was paid by V. notwithstanding the acknowledgment of the receipt of the purchase price in the papers, but V. was a member of a partnership firm which was a creditor of O. and the debt was to be among the first paid. After the application of the proceeds of the sales to the payment of all the debts of O. the balance, if any, was to be returned or paid over to him. *Held*, that the deed, bill of sale, and agreement must be read and construed together, as if

the whole were contained in one instrument; and that read and construed in that manner, they constituted an assignment in trust for the benefit of creditors, and must be so regarded in law, notwithstanding the form of words used in the several instruments.

Section two of the act of 1860, respecting assignments for the benefit of creditors, requiring an assignor, within twenty days after the date of an assignment, to make and deliver to the county judge an inventory of his debts and assets, and section three, requiring the assignee, within thirty days after the date of the assignment, to give a bond, conditioned for the faithful discharge of his duties, are *directory* merely; and an assignment, in other respects good, is valid, and vests a perfect title in the assignee, although not followed by the schedule or bond provided for by the statute.

THIS action was brought to recover the value of certain personal property mentioned in the complaint, which it was alleged the defendant had wrongfully converted to his own use. The answer sought to avoid responsibility on the part of the defendant, by alleging that he was the sheriff of Seneca county, and took the property, in his official capacity, as the property of one William O'Neil. On the trial it was admitted that the defendant was the sheriff of Seneca county at the time the property in question was taken by him.

The plaintiff, to sustain this action, was duly called and sworn as a witness in his own behalf, and testified as follows: "I am plaintiff. I reside in Livingston county, but do business in South Waterloo, Seneca county, and did in February, 1864, and before that time. The store was situate in the village of Waterloo, Seneca county. The goods which I spoke of were in this store. On the 11th day of February, 1864, the defendant came to my store in Waterloo, and took away a portion of my goods. I told the defendant not to take away any of my goods. He said he would — that he was directed to take the goods, and he should follow his directions. The defendant removed the goods from the store, and afterwards sold them at auction." [A paper containing a list of the articles taken by defendant was here shown witness, who said:] "This paper contains a list of the goods taken from my store by the defendant, and their value." It was then admitted by the defendant that the list of articles enu-

merated on the paper produced by the plaintiff was correct as to the articles taken by the defendant, but not as to their value. The witness then further testified: "Before the commencement of this action, I went to the defendant and demanded of him the goods which he had taken from my store, and he told me that he would not give them up." On his cross examination the witness further testified: "I bought this store and goods from William O'Neil, and he and his wife gave me a deed of the real estate at the time I bought it. He also gave me a bill of sale of the personal property. I bought the goods on the 20th of January, 1864. The bill of sale, I suppose, is in the town clerk's office." A bill of sale was here shown witness, who said: "This is the bill of sale I received from O'Neill at the time I bought the goods of him." The following is a copy of said bill of sale: "Know all men by these presents, that I, William O'Neill, of Chemung county, N. Y. of the first part, for and in consideration of the sum of five hundred dollars, lawful money of the United States, to him in hand paid at or before the ensealing and delivery of these presents, by Barney Van Vleet, of Waterloo, Seneca county, New York, of the second part, the receipt whereof is hereby acknowledged, have bargained, sold, granted and conveyed, and by these presents do bargain, sell, grant and convey unto the said party of the second part, his executors, administrators and assigns, all the personal property mentioned and enumerated in an inventory hereto annexed. [Here follows an inventory of goods and accounts, which amounts to $7884.93, a large share of which is in accounts against various persons.] . To have and to hold the same unto the said party of the second part, his executors, administrators and assigns, forever. And I do for my heirs, executors and administrators, covenant and agree to and with the said party of the second part, to warrant and defend the said property hereby sold unto the said party of the second part, his executors, administrators and assigns, against all and every person and persons whomsoever.

Van Vleet .*v.* Slauson.

In witness whereof, I have hereunto set my hand and seal the 20th day of January, 1864.

Signed,      WILLIAM O'NEILL.    [L. S."]

*Question :* What did you pay for these goods mentioned in this bill of sale ? This was objected to by the plaintiff, on the grounds, first, that the bill of sale could not be contradicted or varied or altered by parol evidence ; and, second, that the only effect of the evidence, if admitted, would be to show that the sale from O'Neil to the plaintiff was fraudulent, and that the defendant could not inquire into the good faith of the sale, for the reason that it was not alleged in the answer that the sale from O'Neil to Van Vleet was fraudulent or without consideration. The court overruled the objections, and the plaintiff excepted.

*Answer :* "I paid nearly $3000 for the goods and the real estate conveyed to me by William O'Neill. I paid it in this way : At the time I bought the goods, William O'Neill was owing me nearly $3000, or rather he was owing the firm of Markle & Van Vleet, of which I was a member, nearly that sum for flour and other goods, which we had sold to him, and for indorsements which I had made for him, to enable him to carry on the business of baking and confectionary at Waterloo. It was to pay this indebtedness that he transferred this property to me, as I have before stated. The real estate, which was conveyed to me by William O'Neill and wife was encumbered to a large amount, nearly its full value. There was a writing executed between William O'Neill and myself, besides the bill of sale, shortly after the bill of sale was executed, and on the same occasion. I believe my counsel has that writing." A paper was here shown the witness, who said : "This is the writing I refer to. It was executed by myself and William O'Neill. I claim the property by virtue of this bill of sale and this writing. . I gave no bond, and no inventory of creditors was made." The .counsel for the defendant then offered the writing in evidence, and it was received and read in evidence, and is as follows :  ''

Van Vleet *v.* Slauson.

"Article of agreement made and concluded the 20th day of January, 1864, between William O'Neill, of the first part, and Barna Van Vleet of the second part, witnesseth: That the said William O'Neill has this day conveyed by a quit claim deed, the following real estate, viz: [describing it.] And also, at the same time, the said William O'Neill sold, transferred and delivered to said Barna Van Vleet all the goods, stock in trade and implements belonging to said. O'Neill, and now in the possession of John O'Neill. Now, in consideration thereof, and of one dollar paid, the said Barna Van Vleet hereby covenants and agrees to and with the said William O'Neill, that he will take possession of said property, real and personal, and sell and convert the same into money, for the best price he can obtain therefor, at public or private sale, as shall be deemed best for the parties; and out of the moneys arising from the sales of said property, real and personal, that he will, after deducting the expenses attending the sale of said property, first pay off all the encumbrances and claims which are now upon said real estate, of every nature and description; and, secondly, that he pay to Markel & Van Vleet, of Fayette, Seneca county, an account held by them against said William O'Neill, and on which there is now due about the sum of two thousand dollars; a note held by Simon Goodman, of Rochester, and which is indorsed by Barna Van Vleet, for which there is unpaid about the sum of one thousand and seventy dollars; a debt due the estate of William Kittrick, deceased, of about the sum of eight hundred and forty-seven dollars; and thirdly, that he pay out of the surplus, if any there shall be, all of the debts, claims and demands for which the said William O'Neill shall or may be liable, incurred by or in consequence of purchasing the property lately owned by John O'Neill, and continuing the business heretofore carried on by the said John O'Neill, if there shall be sufficient for that purpose; and if not sufficient, that he apply said surplus to the payment of said claims and demands, *pro rata,* share and share alike. If there shall be

a surplus remaining after making such payments as aforesaid, to pay and discharge all the other debts and claims against the said William O'Neill, if there shall be sufficient for that purpose ; and if not sufficient to pay in full, then to apply said surplus in payment of said debts, *pro rata*, share and share alike. And, lastly, if, after paying all the debts and liabilities of said William O'Neill as aforesaid, then that said Van Vleet pay over to said William O'Neill such surplus, whatever the same may be.

Witness our hands and seals the day and year first above written.          Signed,          WILLIAM O'NEILL,          [L. S.]
BARNA VAN VLEET."          [L. S.]

All of the foregoing testimony, except the admission of the writing, was duly objected to by the plaintiff, on the same grounds as before stated, and received subject to such objections. On his redirect examination, the witness further testified : "After I bought the property of William O'Neill, I immediately took possession of the same, and have retained it ever since, except what I have sold and what was taken from me by the defendant. I have not yet realized enough out of it to pay my claims against William O'Neill." The plaintiff's counsel here offered to prove that the property mentioned in the bill of sale was sold by parol to the plaintiff before the writing was executed. The defendant's counsel objected, on the ground that parol testimony could not be given to vary the writing, and that if the agreement was before the writing, then it merged in the written agreement. The court sustained the objection, and the plaintiff excepted. The defendant here offered in evidence the papers mentioned in the answer—that is, the warrant of attachment, the affidavit upon which it was granted, the undertaking for the same, the levy of the defendant, as sheriff of Seneca county, upon the property in question, the return of the sheriff thereon, the inventory of the appraisers ; also, the judgment roll in the attachment suit of George P. Heir against William

Van Vleet *v.* Slauson.

O'Neill for $622.74 damages and costs, and docketed with the clerk of Seneca county, and the execution thereon, with the return of the said sheriff that said property was sold on said execution. The plaintiff objected to the reception of these papers in evidence, on the ground that he had other evidence to give as to the value of the property, and for other purposes. The court decided to receive the papers in evidence, subject to all legal objections, and to give the plaintiff the right to give proof of the value of the property afterwards, if the motion for a nonsuit, which the defendant was about to make, was denied. The plaintiff excepted. The plaintiff here rested, with the right to call witnesses as to value. The defendant then moved for a nonsuit, on the ground that the bill of sale and the other writing, taken together, constituted a trust in the plaintiff for the benefit of all of the creditors of William O'Neill, and that none of the provisions of the law of 1860, in relation to assignments, were complied with. Motion granted, and the plaintiff excepted. Whereupon, on motion of the plaintiff's counsel, the court ordered a stay of judgment for thirty days, and that the plaintiff have leave to make a case on which to move for a new trial, and that such motion be heard at general term in the first instance, and that in the meantime all proceedings on the part of the defendant be stayed until the decision of such motion.

*S. R. Ten Eyck,* for the plaintiff.

*Geo. W. Gray,* for the defendant.

*By the Court,* JOHNSON, J. The deed conveying the real estate, and the bill of sale of the personal property, executed by O'Neill to the plaintiff, and the article of agreement between them, all bearing the same date and relating to the same subject matter, must be read and construed together as though the whole was contained in one instrument. Read and construed in this manner they constitute nothing more nor less than an

assignment of property in trust for the benefit of creditors. The conveyance, in form, seems to be an absolute conveyance of the title, as upon a bargain and sale, and so does the bill of sale of the personal property; and the agreement on the part of the plaintiff is in the form of a covenant to take the property and pay certain debts of the grantor, and vendor, first, and other debts in proportion to the amount of funds realized from a sale of the property, and remaining after paying certain preferred debts. But the form of the several instruments does not necessarily determine their true legal character. It appears from the plaintiff's testimony, that nothing was in fact paid by him for the property, notwithstanding the acknowledgment of the receipt of the purchase price in the papers. The plaintiff was a member of a partnership firm, which firm was a creditor of the assignor to the amount of nearly $3000, and this debt, as appears from the article of agreement, is to be amongst the first paid from the proceeds of the sales. After certain debts are paid, the agreement provides for the payment of a certain other class of debts, if the funds remaining are sufficient for their full payment, and if not, then *pro rata*, and out of the residue to pay all other debts of the assignor in full if the fund shall be sufficient for that purpose, and if not, then *pro rata*. The real and personal property, thus conveyed and transferred, is all to be sold and the proceeds applied in payment of the debts of the grantor, and vendor, and the balance, if any, after the payment of all his debts, to be returned or paid over to him. It is thus seen that the transaction has every element of a trust for the benefit of creditors, and in law must be regarded simply as an assignment of that character, notwithstanding the form of words used in the several instruments.

It appears, however, that no inventory or account of the creditors of the debtor, or of the amount owing to each, or in gross, had ever been made, and no bond had ever been given by the plaintiff, as required by the second and third sections of the act of 1860, on the subject of assignments for

the benefit of creditors. (*Sess. Laws of* 1860, *ch.* 348.) On this ground, as it would seem, from the case, the plaintiff was nonsuited upon the trial. This, of course, must have been upon the ground that by reason of the non-compliance with these provisions of the act, the transfer was wholly ineffectual and conferred no right or title upon the plaintiff. This is the principal question in the case. The papers constituting the assignment were made the 20th of January, 1860. On the 11th of February, twenty-two days thereafter, the goods in question, for which this action was brought, were seized by the defendant as sheriff, by virtue of an attachment in favor of a creditor of O'Neill, the assignor. The act in question provides that the inventory or schedule shall be made out and delivered to the county judge, within twenty days after the making of the assignment, and the assignee is required to execute and deliver his bond within thirty days after the date of the assignment.

The precise point to be determined is, whether these provisions of the statute are mandatory, or directory merely, in their character. This precise question was decided in this court, in the sixth district, in the case of *Juliand* v. *Rathbone*, (39 *Barb.* 97,) all four of the judges concurring, Balcom and Mason, Justices, each delivering elaborate opinions. It was there held that these provisions were directory merely, and that an assignment, in other respects good, was valid, and vested a perfect title in the assignee, although not followed by the schedule, or the bond, provided for by sections two and three of the act. It is our practice to hold these decisions of our own court in other districts binding upon us until they are reversed, either by this court or by the Court of Appeals, unless they are so clearly erroneous that we should reverse had they been made in our own district.

I am disposed to place our decision, in this case, upon the authority of the decision in the case above cited, although I am not quite certain that I should have so held were it an

original question. It is quite true, as the learned judges in that case remark, that the title must vest somewhere, and when it has once vested, it could not be forfeited by a mere neglect to comply with some direction of a statute. It should be observed, however, that section three seems to make the giving of the bond by the assignee, a pre-requisite to his power or authority under the assignment, to sell, dispose of, or convert the property to the purposes of the trust, which is not entirely consistent with a mere directory provision. The power of disposition is certainly essential to a complete title to property. But regarding the decision in that case as authority, the nonsuit was erroneous, as the plaintiff was the legal owner of the property by virtue of these several instruments constituting him an assignee and trustee for the benefit of creditors. The same view of these provisions of the statute, substantially, was taken by Marvin, J. at special term in *Evans* v. *Chapin*, (20 *How. Pr. R.* 289.) In *Fairchild* v. *Gwynne*, (14 *Abbott's Pr.* 121,) the assignment was not acknowledged before its delivery, nor afterwards, nor had it been recorded. The court at special term held that the assignment was not void by reason of this omission; but that the provision of the first section of the act of 1860, requiring the assignment to be acknowledged and the certificate of acknowledgment indorsed upon the assignment before delivery, was merely directory. But the court at general term, in the first district, reversed the decision of the special term, on the sole ground that the assignment not having been acknowledged, and having no certificate of acknowledgment indorsed upon it, was not executed in such a manner as to authorize its delivery to the assignee, and it not having been properly executed, the assignee could acquire no rights under it. (16 *Abbott's Pr.* 23.) But that question is not made in this case. For aught that appears, the deed, and the bill of sale of the personal property, were both duly acknowledged, and had the certificate indorsed. The

question here is, upon the neglect to make the schedule and to give the bond, which seems to be settled against the defendant. There must therefore be a new trial, with costs to abide the event.

[Monroe General Term, March 5, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]