WILLIAM J. RENNIE, ASSIGNEE OF ANSEL H. GAIGE, AND ANSEL H. GAIGE, PLAINTIFFS, *v.* JEREMIAH BEAN AND OTHERS, DEFENDANTS.

*General assignment — requisites of, under chap.* 466 *of* 1877.

Since the passage of chapter 466 of 1877, a general assignment for the benefit of creditors must, in order to vest the property in the assignee, be in a writing duly acknowledged by the assignor, must have thereon the assent of the assignee, duly subscribed and acknowledged by him, and must have been duly recorded.

An assignment recorded without the assent of the assignee to act, having been duly subscribed and acknowledged by him thereon, although he may have orally agreed to act, is void as against creditors claiming under attachments against the property of the assignor.

SUBMISSION of a controversy upon agreed facts under section 1279 of the Code of Civil Procedure.

*Solomon Judd*, for the plaintiffs.

*Chapman & Lyon*, for the defendants.

BOCKES, J.:

The assignment was executed and acknowledged by the assignor on the 18th of September, 1877, and its acknowledgment was duly certified by a commissioner of deeds on that day. On the following day, the nineteenth, the assignment was handed to the assignee, who thereupon orally assented to act as assignee thereunder, and immediately delivered the instrument to the county clerk for record, and it was recorded on that day at 1.30 P. M. On the

same day the assignee took actual possession of the assigned property, after which, and at 2.30 p. m. of that day, the property was seized by the defendant Dunn, as sheriff, under an attachment in favor of the defendant Bean against the assignor. Five days thereafter, and on the twenty-fourth September, the assignee signed and acknowledged his assent to act as assignee. Whereupon the instrument was again recorded in the county clerk's office. The question is, when was the assignment to be deemed delivered so as to pass the title to the assigned property to the assignee? The first act of recording was unauthorized and of course goes for nothing. The statute is, that "the assent of the assignee, subscribed and acknowledged by him, shall appear in writing  *  *  *  upon the assignment before the same is recorded." (Sess. Laws of 1877, chap. 466, § 1.) These requirements were not complied with prior to the first recording of the instrument; hence, that act was without authority. The assignment did not become effectual to pass title until there was an acceptance of the trust by the assignee. This was held in *Crosby* v. *Hillyer* (24 Wend., 280). It was there decided that the mere taking of the instrument in hand by the assignee, and its retention by him, amounted to nothing; that there must be an acceptance of the trust; that a delivery without acceptance was nugatory.

Formerly delivery of the assignment to the assignee, his oral acceptance of the trust and taking possession of the assigned property, as was done in this case on the nineteenth of September, would have vested the title in the assignee, and neither an acknowledgment of the instrument nor its recording was necessary to its validity. But in 1860 a law was passed which provided (1) that assignments should be in writing; (2) that their execution should be acknowledged, and (3) that the certificate of acknowledgment should be indorsed thereon before delivery to the assignee. (Sess. Laws of 1860, chap. 348, § 1.) Under this statute it was held that the acknowledgment by the assignor was a condition precedent to a valid and effectual delivery. (*Fairchild* v. *Gwynne*, 16 Abb., 23.) This decision was by a divided court. The doctrine of this case was, however, afterward redeclared by the Court of Appeals in *Hardmann* v. *Bowen* (39 N. Y., 196) and in *Britton* v. *Lorenz* (45 N. Y., 51). Thus it was held in the former of these cases that under this statute of 1860,

even though the assignment was delivered together with the possession of the assigned property, yet creditors of the assignors might attach the property in the hands of the assignee prior to making the statutory acknowledgment. The present statute of 1877, chapter 466, which we are here called upon to construe, differs from that of 1860 in this, that the former, the law of 1877, does not in terms declare that the certificate of acknowledgment must be indorsed on the instrument *before* delivery to the assignee. But in both of the cases last cited the question was discussed whether the provisions of the law declaring how assignments should be executed and delivered were merely directory, or were mandatory, and it was determined that they were mandatory. It was argued that the purpose and object of the statute was to correct abuses theretofore existing in the execution and delivery of those instruments ; and it was decided in effect that, such being the case, an observance of the provisions of the law, declaring what should be done and the mode of doing it, was essential and was a pre-requisite to their validity. On this subject Judge MULLEN says, in *Fairchild* v. *Gwynne*, that " voluntary assignments by insolvent debtors for the benefit of creditors, in and by which certain creditors or classes of creditors have been preferred over other creditors or classes, have not been favored instruments in the courts, nor have business men looked upon them without suspicion. The secrecy with which they might be made, the facility they afforded to fraud, the unjust preferences they secured, required that they should be watched with the greatest vigilance and scrutinized with the greatest care. It was in the power of the debtor and his assignee to put forward one of these instruments at such time as should most effectually give effect to their own purposes, to *ante* or *post* date it, to consider it as delivered or not delivered, to alter the schedules, to increase or lessen the number of preferred creditors, to prefer a friend or non-prefer an enemy, to increase or lessen the amount of property to be passed under the assignment ; these and other fraudulent and dishonest acts might have been done without any opportunity being afforded to the creditors to prevent or punish them. It was to prevent these abuses that the statute (chap. 348 of 1860) was passed ;" and the learned judge added " there was an evil to be remedied, and it could only be remedied by a law requiring

the persons to be affected by it to conform to its provisions or their acts would be void;" and he further adds as follows: "That the Legislature intended to make this statute mandatory, I have no doubt." These remarks are introduced here at length, because of their pertinency and direct bearing upon the case in hand. The same line of reasoning is pursued by Judge MASON in *Hardmann* v. *Bowen*, above cited. He says that it is a fundamental error to treat the statute as merely directory; that "it is no such thing; that it introduces a new law in regard to assignments."

Then regarding the act of 1877, chapter 466, section 1, as mandatory, what is requisite to constitute a valid assignment for the benefit of creditors, so as to vest the property in the assignee? Those requirements are specified in section 1 of that act, and for anything that appears or for any sound reasoning that can be adduced to the contrary, each requirement should be held peremptory, one as much as the other. That section provides that assignments shall be in writing; shall be duly acknowledged by the assignor; shall be recorded in the clerk's office; and it also provides that the assent of the assignee shall be in writing upon the instrument before it shall be recorded. According to the decisions above cited, the law is mandatory as to the first three provisions above stated. As to those the statute is peremptory. It thus declares the requisites of a valid assignment. It was competent for the legislature to establish the prerequisites, and by making it a public record before it should take effect, many of the abuses which before existed would be corrected. It is a matter of importance to creditors to know whether or not an assignment has been made; whether or not, if made, it has been delivered so as to become effectual to pass the debtor's property, also its provisions. The making a public record of it answers all proper requisites in this regard. It is then put on equal footing with other records which the public good requires should be open to inspection to all persons. This was doubtless what the legislature intended by this act, as in this way many of the evils which had before surrounded assignments by insolvent and, often times, dishonest debtors, would be, to some extent at least, remedied.

In this case the assent of the assignee was not indorsed, and of course it was not acknowledged, nor was the instrument duly

recorded until several days after the seizure of the property under the attachment. Hence, as we conclude, the attaching creditors obtained a priority of right to it, as against any claim which the assignee could interpose.

In the above consideration of the case we have not overlooked the decisions made under the law of 1860, which held some of its provisions to be merely directory. These cases have reference to duties or acts to be performed after the assignment has taken effect and the title has passed. (*Evans* v. *Chapin*, 20 How., 289; *Van Vleet* v. *Slauson*, 45 Barb., 317; *Barbour* v. *Everson*, 16 Abb., 366; *Thrasher* v. *Bentley*, 59 N. Y., 649; *Brennan* v. *Willson*, 71 id., 502; *Matter of Farnam*, 75 id., 190.) These cases are, as we think, here inapplicable.

The defendants are entitled to judgment, with costs. If the parties are unable to agree upon the form of the judgment to be entered, it may be settled by one of the members of the court.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment allowed for defendant on submission, with costs.