[Opinion adopted May 6, 1884.]

---

## C. A. KEATING ET AL. v. E. A. VAUGHN.

(Case No. 5132.)

1. ASSIGNEE — APPOINTMENT OF BY COUNTY JUDGE.— Under the fourteenth section of the act of March 24, 1879, which authorizes the county judge to remove an assignee for the benefit of creditors, and to appoint another in his stead, the judge may accept a resignation of the assignee named by the debtor, who announces his refusal to act, and appoint another in his stead. The acceptance of the resignation is equivalent to a removal.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS.— When the deed of assignment made for the benefit of creditors conveys designated property, without specifying in terms that it mentioned all the property owned by the assignor, but there was attached to and made part of the assignment, an inventory, which contained a declaration that the property therein named was all the estate of the assignor of every description, except such as was exempt from forced sale,— the two papers were construed as one, and as a compliance with the second section of the act of March 24, 1879, which required a conveyance of all the debtor's property except that which was exempt.

3. SAME — STATUTE CONSTRUED.— Under the first and ninth sections of the act of March 24, 1879, every conceivable interest of the assignor in the property which he owned had passed by the deed to the assignee, and it was unimportant whether the assignment reserved a surplus that might remain after satisfying consenting creditors.

4. SAME.— Under such an assignment, which is made for the benefit of consenting creditors according to its terms, though non-consenting creditors do not take, under the eighth section of the act above referred to, they may garnishee any excess which may remain in the hands of the assignee after the payment of consenting creditors. If no such remedy should be resorted to, the excess should be paid into the district court, to be disposed of by its decree to creditors entitled thereto, and if there should be none, after the

lapse of a reasonable time, who appear, then the excess would be delivered over to the assignor.

5. SAME.— When the property passes under the statute by the assignment, no provision inserted in the deed regarding consenting creditors can interfere with the distribution of the estate, nor can the rights of creditors protected by it be destroyed by attachments or other process in a suit by dissatisfied creditors.

6. ASSIGNEE'S BOND.— The county clerk, as the custodian of the bond of an assignee appointed by the judge, may certify a copy thereof which may be offered in evidence, and its execution and deposit with the clerk are *prima facie* evidence of the appointment and qualification of the appointed assignee.

7. STATUTE CONSTRUED.— A state statute which, in providing for the administration of the estates of insolvents, under assignments voluntarily made, permits such assignments for the benefit only of such creditors as may consent to receive their proportionate share of the debtor's estate and execute a release of the debtor, cannot be construed as being a law impairing the obligation of contracts; and an assignment made under such a law cannot be held void because some of the creditors are citizens of other states.

8. CASES REVIEWED.— Livermore *et al. v.* Jenckes *et al.,* 21 Howard, 126; and Brashear *v.* West, 7 Peters, 609, reviewed and discussed.

APPEAL from Hays. Tried below before the Hon. L. W. Moore.

Suit by Vaughn, assignee, against C. A. Keating and H. E. Barber, for the recovery of damages for seizing and taking away certain goods of the estimated value of $2,000.

Vaughn averred that on the 9th of May, 1883, one W. D. Keith, an insolvent debtor, made an assignment of all his property, real and personal, other than such as was exempt from execution, to W. W. Peavy, a resident of said county, assignee for the benefit of his creditors, etc.; that Peavy accepted the trust, gave bond, took possession of the property, and entered upon the discharge of his duties as trustee. That about the 25th of June, 1883, Peavy resigned his trust as assignee to E. K. Kone, judge of the county court of Hays county, and that plaintiff was by said county judge appointed "assignee of said estate" to fill the vacancy so created by the resignation of Peavy; that plaintiff thereupon qualified by giving bond, etc., and entered upon his duties as assignee; that on the 22d of May, 1883, and while Peavy, as assignee, was in the peaceable possession of the property, Keating and Barber seized, carried away, and wrongfully converted to their own use, some of the property, consisting of merchandise of the value of $2,000. A schedule of the goods so taken was attached to and made a part of the petition.

The defendants filed a general demurrer and a general denial, and also a special plea of justification under a writ of attachment, issued in a suit pending, in which C. A. Keating was plaintiff and W. D.

Keith defendant, for the sum of $1,097.37, averring that Keating was the plaintiff in that suit and that Barber was the sheriff of Hays county at that time; that as such he received the attachment, and in obedience to its commands levied upon the goods, for the taking of which this suit was brought, as the property of W. D. Keith, and that the goods were the property of Keith, and liable to levy under the attachment; that Keating was a creditor of W. D. Keith; that the attachment sued out against Keith was based upon a *bona fide* indebtedness, and that the pretended assignment of Keith to W. W. Peavy was fraudulent and void as to said Keating, a creditor.

The court overruled the demurrer of defendants to plaintiff's petition, and upon the issues of law and fact rendered a judgment in favor of plaintiff for the value of goods, etc., and costs of suit.

The character of the assignment and the positions in regard thereto assumed on the trial below are apparent from the opinion.

*Alex. White* and *Hutchinson & Franklin*, for appellant, cited: Shepherd v. McEves, 4 Johns. Ch., 137; Sargent v. Howe, 21 Ill., 148; Breman v. Wilson, 71 N. Y., 506; Wilson v. Spring, 64 Ill., 14.

On the effect of the resignation of the assignee, they cited: Burrill on Assignments, § 473; Perry on Trusts, §§ 921, 922; Seal v. Duffay, 4 Pa. St., 374; Ketchum v. Mobile, Ohio R. R. Co., 2 Woods, 532; 2 Spence's Eq. Jur., 942; Lewin on Trusts, 464; Thatcher v. Candee, 4 Abb. App., 387.

That the assignment was void, they cited: Wilkes v. Ferris, 5 J. R., 335; Ninus v. Armstrong, 3 Md., 87; secs. 8 and 16, Act March 24, 1879, Sup.; Donoho v. Fish Bros., 58 Tex., 164; Leon & H. Blum v. Wilborne, 58 Tex., 161; Rosenburg v. Moore, 11 Md., 376; Whedbee v. Stewart, 40 Md., 414; Burrill on Assignments, Appendix, 681–690, 704; Nolin v. Douglass, 2 Hill Ch., 443; *In re* Wilson, 4 Barr, 430, 448, 449; Ingraham v. Gregg, 12 S. & M., 22–30; Seaving v. Brinkerhoff, 5 Johns. Ch., 329; Lentelhon v. Moffat, 1 Edw. Ch., 451; Halsey v. Whitney, 4 Mason, 206; Bump on Fraudulent Conveyances, 354; Malcolm v. Hodges, 8 Md., 381.

That the assignment was void as to non-resident creditors, they cited: Baldwin v. Hale, 1 Wall., 223–231; Cook v. Moffatt and others, 5 How., 310; Boyle v. Zacherie, 6 Pet., 348; Ogden v. Saunders, 12 Wheat., 213; 2 Story on Const., sec. 1390; Story on Conflict of Laws, § 341, p. 573.

*Stringfellow & McNeil*, for appellee, cited: Appendix, R. S., p. 7, § 14; Burrill on Assignments, §§ 468–473; Keiley v. Dusenbury,

42 N. Y., 238; Leggett *v.* Hunter, 19 N. Y., 459; Crizer *v.* Holliday, 11 Paige, 819; Act of Texas Legislature March 24, 1879; Bailey *v.* Mills, 27 Tex., 435; King *v.* Russell, 40 Tex., 125; Burrill on Assignments, p. 251; Floyd & Co. *v.* Smith, 19 Ohio St., 546; Bump on Fraudulent Conveyances, ch. 15; King *v.* Watson, 3 Price (Exch.), 6; 2 Kent Com., (534), 693; Cheever *v.* Finlay, 7 Serg. & R., 510; Wilson *v.* Kneppley, 10 Serg. & R., 439; Bayne *v.* Willie, 10 Watts, 309; Bradshaw *v.* West, 7 Pet., 608; Livingston *v.* Bell, 3 Watts, 198; Skipvith's Ex'rs *v.* Cunningham, 8 Leigh, 271; Gordon *v.* Cannon, 18 Gratt., 387; Phippen *v.* Durham, 8 Gratt., 457; Dockroy *v.* Dockroy, 2 R. I., 321; Haydock *v.* Stanhope, 1 Curt., 471; Nightingale *v.* Harris, 6 R. I., 321; Lippencott *v.* Barker, 2 Bin., 174; Pierpont *v.* Love (Graham), 4 Wash. C. C., 232.

STAYTON, ASSOCIATE JUSTICE.—The first assignment of error is: "The court erred in overruling defendant's general demurrer to plaintiff's petition."

Under this assignment it is contended that the county judge had no power, on the resignation of the assignee named in the trust deed, to appoint another assignee.

Neither by assignment of error, nor by proposition based on it, is it urged that the action of the county judge was not invoked by a proper person; hence that question need not be considered.

We are of the opinion that the resignation of the assignee, Peavy, was in contemplation of the statute a refusal further to execute the trust. The fourteenth section of the act of March 24, 1879, in terms provides that the county judge shall have power, when an assignee refuses to execute the trust, to remove him, and to appoint another.

It would require an exceedingly technical and unreasonable construction to be placed on the act to justify the holding that when the assignee appointed by the deed declines further to act, and requests the appointment of some other person, that a state of facts does not exist which authorizes the county judge to act, as fully as though he had first entered up an order removing the assignee. The acceptance of the resignation is certainly equivalent to an order of removal, which, when made, calls for the appointment of another. Full notice to all persons interested in the estate seems to have been given, and we see no sufficient reason assigned for holding that the appointment of Vaughn was not valid.

It is urged, through the third assignment, that it was error to overrule the objections made to the introduction of the deed of assignment.

These objections were: 1st, that the deed of assignment stipulated for releases to the assignor by such creditors as should take benefits under it, and did not convey all the estate of the debtor subject to forced sale; 2d, that it reserves to the assignor any surplus which may remain after paying the debts.

The first ground is based on a mistake as to what the deed does really convey.

The second section of the act of March 24, 1879, requires that there shall be annexed to the deed of assignment, in addition to a statement of the indebtedness of the assignor, names and residences of the several creditors, character of debt, etc., "a full and true inventory of all such debtor's estate at the date of such assignment, both real and personal, in law or in equity, and the incumbrances existing thereon, and of all vouchers and securities relating thereto, and the value of such estate, according to the best knowledge of such debtor or debtors."

In this case the assignment deed conveyed certain designated property, without in terms declaring that the property thus conveyed was all the assignor possessed, except that exempt from forced sale. The inventory, however, which was made a part of the assignment, as the law directs, as well as the oath of the assignor, which the statute also requires to be made, contained clear and unequivocal declarations that the property conveyed by the deed and named particularly in the inventory was all the estate of the assignor, of every character whatever, which he owned, except named property which was exempted from forced sale.

We are of the opinion that these papers should be taken together as the assignment, and the deed be read in the light of the facts found in all these papers. Such certainly is the true rule. Burrill on Assignments, 128; Norton v. Kearney, 10 Wis., 448; Van Vleet v. Slauson, 45 Barb., 317; Kruse v. Prindle, 8 Oreg., 158; Burrows v. Lehndorff, 8 Iowa, 96; Hott v. Bancroft, 30 Ala., 195; Downing v. Kintzing, 2 S. & R., 326.

Thus tested, it is quite evident that the assignor conveyed all his property of whatever kind, or however situated, to the assignee for the benefit of his creditors, excepting only such as the law under which he was acting permitted him to except; and by force of the first and ninth sections of the act, every conceivable interest in property which the assignor or his creditors had passed by the deed and might be found and title thereto asserted by the assignee for the benefit of the creditors.

In this case it is, therefore, not necessary for us to determine

whether, as a fact, it may be shown by extrinsic evidence that a deed which in express terms does not convey all of the property of the debtor, not exempt from forced sale, does in fact do so.

Under the statute, it is unimportant whether the assignor by the assignment reserves to himself any surplus which may remain after payment of the consenting creditors, for the statute itself regulates that matter independent of what the terms of the deed may be in this respect, if the assignment be as is this, under the third section of the act, which, with some of the following sections, refers to assignments made for the benefit of consenting creditors only.

Under such an assignment, strictly, other creditors than those consenting to the release of the debtor do not take at all; but the eighth section of the act provides that non-consenting creditors may garnishee the assignee for any excess of such estate remaining in his hands after the payment to the consenting creditors of their debts and the costs and expenses of executing the assignment.

If non-consenting creditors should not pursue that course in case of an excess, the sixteenth section of the act, when the trust has been executed and the assignee desires to be discharged therefrom, provides that the excess shall be paid into the district court, subject to be paid out upon the decree of that court, which would, no doubt, be so made as to protect non-consenting creditors who might show themselves entitled thereto, and take the necessary steps to fix a legal claim on the fund, in so far as the fund would go; if, however, no claim to such a fund was made by any creditor, the court, after the lapse of a reasonable time, would certainly direct the excess to be delivered to the assignor.

Thus the statute regulates the whole matter, and must control, if there be any conflict between its provisions and the deed. If the property passes to the assignee for the benefit of creditors generally, or for the benefit of consenting creditors alone, no provision which the assignor may make in the deed can interfere with the distribution of the estate as the statute requires; nor can the rights of creditors, intended to be protected by it, be destroyed by the levy of attachments or other process on the assigned property by dissatisfied creditors. They cannot disregard the plain intent of the statute, and abuse the process of a court to accomplish purposes utterly at war with the manifest purpose of the act.

Proof of the appointment of the assignee, Vaughn, seems to have been made by the production of the original order of the county judge appointing him, together with his bond duly approved and filed as the law directs, and not by certified copies; such being true,

the objection to the evidence, based on the ground that the clerk of the county court had no authority to certify them, does not arise.

The law certainly contemplates that some record of the appointment of an assignee shall be made, or caused to be made, by the judge who makes the appointment; and it requires the bond of the assignee to be filed with the county clerk of his county, and to the latter, at least, as its custodian, the clerk might certify for any purpose for which it, or a copy of it, might be needed.

If the appointment had not been offered in evidence, the bond of the assignee, reciting as it did the appointment, and approved by the judge who made the appointment, as the law required it to be, was *prima facie* evidence of the appointment as well as of the qualification of the assignee.

It is urged that, as it appears that some of the creditors of the assignor, who have not consented to take under the assignment, are citizens of other states, therefore the assignment is void as to such persons, and hence void as to all persons.

In support of this proposition we are referred to the line of decisions of the supreme court of the United-States in reference to the effect of a discharge under a state insolvent law upon the rights of persons not citizens of the state in which the discharge is granted and upon the right of the states to pass insolvent laws.

As we understand this question, these decisions have no application whatever. The statute in question is in no sense an insolvent law, providing for the discharge of a debtor by a compliance with its terms without the consent of the creditor; but is a statute which, for the better protection of creditors, prescribes a mode for the administration of the estates of insolvents under assignments made by the debtors themselves, which would be good at common law, unaided by the statute, and, like any other trust, could be enforced in a court of equity in the absence of a statute providing a mode of administration.

Proceedings under such statutes have been sustained and held not to be even suspended by a general bankrupt law enacted by congress. Hawkin's Appeal, 34 Conn., 549; Maltbie *v.* Hotchkiss, 38 Conn., 81; Beck *v.* Parker, 65 Pa. St., 264.

The statutes of this state do not provide for the discharge of a debtor from his liability and obligation to fully pay every debt he has contracted, unless such discharge is consented to by the creditor.

It has never been conceived, in all the discussions had upon the subject of state laws which impaired the obligation of contracts, that a state statute, which, in providing for the administration of

the estates of insolvents, under assignments voluntarily made, permitted assignments to be made for the benefit only of such creditors as would consent to receive their proportionate share of the estate and therefore release the debtor, were laws impairing the obligation of contracts.

There has been much contrariety of opinion in the courts of the states of this Union as to the validity of assignments which stipulate for a release of the debtor by such creditors as take benefits under the assignment; and a review of the cases on this subject will not be made for the purpose of determining what the true rule in this respect is, for the matter is here settled by statute.   Cases will be found fully collected in notes to Burrill on Assignments, secs. 184–200.

In the case of Livermore *et al. v.* Jenckes *et al.*, 21 How., 126, an assignment was made in Rhode Island, where the same was lawful, which excluded from benefits under it all creditors who should refuse to execute releases from their respective claims.   The property assigned was situated in the states of Rhode Island and New York, and by the laws of the latter state such an assignment, if executed in that state, would have been invalid.

Creditors of the assignor residing in New York instituted proceedings in the circuit court of the United States for the southern district of the state of New York to set aside the assignment on the ground that it was to inure only to such of the assignee's creditors as should sign releases.   The application was denied by the circuit court, and on appeal the supreme court of the United States held that the assignment, valid by the law of Rhode Island, was valid elsewhere, and binding on citizens of New York, although, if the assignment had been made in that state by persons residing there, it would have been invalid.

Brashear *v.* West, 7 Pet., 609, was a case involving practically the same question as the case just cited, and was between citizens and residents of different states.   In disposing of the case, Marshall, C. J., said:   " The fifth and most serious objection is that the deed excludes all creditors who shall not within ninety days execute a release of all claims and demands on the said Francis West, of any nature or kind whatsoever.

" The stipulation cannot operate to the exemption of any portion of the debtor's property from the payment of his debts.

" If a surplus should remain after their extinguishment, that would be rightfully his; should the fund not be adequate, no part of it is relinquished.   The creditor releases his claim only to the future

labors of his debtor; if this release were voluntary it would be unexceptionable. But it is induced by the necessity arising from the certainty of being postponed to all those creditors who shall accept the terms by giving the release. It is not, therefore, voluntary. Humanity and policy, however, both plead so strongly in favor of leaving the product of his future labor to the debtor, who has surrendered all his property, that, in every commercial country known to us, except our own, the principle is established by law. This certainly furnishes a very imposing argument against its being fraudulent.

"The objection is certainly powerful that its tendency is to delay creditors. If there be a surplus, this surplus is placed, in some degree, out of the reach of those who do not sign the release, and thereby entitle themselves under the deed. The weight of this argument is felt. But the property is not entirely locked up. A court of equity, or courts exercising chancery jurisdiction, will compel the execution of the trust, and decree what may remain to those creditors who have not acceded to the deed. Yet we are far from being satisfied that, upon general principles, such a deed ought to be sustained.

"But whatever may be the intrinsic weight of this objection it seems not to have prevailed in Pennsylvania. The construction which the courts of that state have put on the Pennsylvania statute of frauds must be received by the courts of the United States."

That in Pennsylvania, by construction of the statutes of that state, such assignments are valid, certainly places the matter solely on the ground that there so the law is; with us, so the law is, by the direct words of the statutes of this state, so plainly written as to not need construction, or to authorize one variant from the letter.

There is no error in the judgment and it is affirmed.

AFFIRMED.

[Opinion delivered May 9, 1884.]