## J. L. WINDHAM ET AL. v. PATTY & MATHEWS.

(Case No. 1631.)

1. DEED OF ASSIGNMENT — ATTACHMENT.— A deed of assignment made by insolvent debtors, which recited their inability to pay in full and a desire to convey all their property for the benefit of creditors, conveyed in terms "all their lands, tenements, hereditaments, goods, property, and choses in action of every manner and description whatsoever, except such property as may be exempt by the constitution and laws of the state from forced sale." On its face it contemplated three parties to it, viz.: the makers, the assignee, and the creditors, "who have executed or may hereafter execute or accede to its terms." The deed closed with these words: "And the parties of the third part (the creditors) express their consent to this arrangement and accept the provisions made for them." It was only signed by the makers and the assignee. *Held:*

(1) The creditors accepting the provisions of the deed might do so without signing it.

(2) The deed conveyed all the property of the makers, whether partnership or individual, and was not void.

(3) Even if one of the parties making the assignment was not a partner, and joined in the deed for the purpose of securing payment of his individual debts with funds belonging to the other assignor, it did not justify the creditors of the latter in a seizure of the goods under attachment.

(4) The remedy of such creditors was in a proper distribution of the property assigned, under the assignment, enforced by an appeal to the equity jurisdiction of the court.

(5) The failure of the assignee to give bond will not invalidate a deed of assignment properly made, or justify an attachment of the property transferred. The remedy of the creditors is to apply for the appointment of another to discharge the trust (act March 4, 1879, sec. 14).

APPEAL from Callahan. Tried below before the Hon. T. B. Wheeler.

C. L. Terry carried on business as a retail merchant in Callahan county, and died intestate. His heirs at law were his widow, Rachel Terry, his son, M. M. Terry, and a minor son who soon afterward died intestate, leaving Rachel Terry and M. M. Terry heirs of the entire estate. M. M. Terry took charge of the business, carrying it on in his own name, and using his motl e.'s means with his own, until May, 1881, when he was closed out by attachment at the instance of his creditors, Leon & H. Blum, who seized said business. His mother, Rachel Terry, also attached in order to get her part of the estate out of the business. She made arrangements to assume the Blum indebtedness, and to carry on the business as her own exclusively, took out the license in her name alone, bought goods on a credit and put into the business in her own name, and with the understanding with her creditors that M. M. Terry had no interest in the business, and employed M. M. Terry to manage and control it, and gave him half the profits. M. M. Terry, during all this time, was notoriously insolvent. The business was so conducted up to the 28th day of April, 1882, when R. Terry, joined by her son, M M. Terry, made an assignment for the benefit of such of their creditors only who would accept, and turned over the entire business to J. E. Thomas, assignee (who was also attorney for Blum and R. Terry, in attaching M. M. Terry), who within two days afterward sold the goods for a small cash payment, the balance on time from one month to six months, taking notes with personal security. The sale was made to appellees Patty & Mathews, Patty having been a clerk in the business for months prior and up to date of assignment. Appellants Schneider & Davis, who were creditors of R. Terry, having sold goods to her in the business on her individual account, up to a few days of the assignment, with the understanding that M. M. Terry was not interested in the business, sued out an attachment in the county court, placed it in the hands of Windham, the constable, who levied on the stock of goods assigned to Thomas and sold to appellees; Schneider & Davis obtained judg-

ment, foreclosed their attachment lien, and sold the property as the property of R. Terry.

Appellees sued Schneider & Davis and Windham and his sureties on his official bond, for the value of the goods, claiming them under the assignment and sale. No creditor accepted in writing under the assignment. Defendants charged that the assignment was fraudulent and void as to Schneider & Davis, and that the goods were subject to attachment.

The county judge, of his own motion, transferred the cause to the district court, where it was tried by jury, who, under the charge of the court, returned a verdict for plaintiffs for value of the goods and interest from date of attachment levy. The amount being in excess of the amount of constable's bond, plaintiffs entered a remitter as to the sureties, so as to reduce judgment as to them to amount of bond.

*F. B. Stanley*, for appellants, on the proposition that the assignment was fraudulent and void on its face, cited: White & Willson, Civil Cases, 769, p. 422; 808, p. 460; Caton v. Mosely, 25 Tex., 374, and authorities cited; Baldwin v. Peet, 22 Tex., 708; Edmundson v. Silliman, 50 Tex., 112; Lawrence v. Norton, 22 Am. Law Reg.; West v. Snodgrass, 17 Ala., 549; Malcomb v. Hodges, 8 Md., 418; Bridges v. Hindes, 16 Md., 101; Grimshaw v. Walker, 12 Ala., 101; Whedbee v. Stewart, 40 Ind., 414; Austin v. Bell, 20 Johns., 442; Sewall v. Russell, 2 Paige, 175; Bump on Fraud. Con., 46, 328–31, 356, 372 (2d ed.), 393, 421, 430, 463; Howell v. Edgar, 4 Ill., 417; Green v. Branch Bank, 33 Ala., 643; Dana v. Lull, 17 Vt., 390; Hyslop v. Clark, 14 Johns., 458; Pierson v. Manning, 2 Mich., 445.

*John Bowyer*, for appellees.

DELANY, J. COM. APP.— By an agreement of counsel contained in the record, the only issue in the case is " as to the legality of the assignment, . . . and the question whether it was or is fraudulent or void as to the defendants Schneider & Davis, and whether the alleged transfer by M. M. Terry and R. Terry to J. E. Thomas, and from him to plaintiffs, was fair, legal and just, and, if there was fraud or covin in the transfer, whether the plaintiffs were charged with notice of the same."

The question whether the deed of assignment was made with fraudulent intent was submitted to the jury by the charge; and the result of their finding is that there was no such intent.

It seems to us that the real questions to be decided might be more clearly stated thus: Was the deed sufficient to pass all the property

of the makers — partnership as well as individual — to the assignee; and were the makers insolvent? If these questions are answered in the affirmative, the motives of the makers, whether fair or fraudulent, are matters of little importance. Blum v. Welborne, 58 Tex., 157.

The deed sets out that the makers are "indebted to divers persons in considerable sums of money which they are at present unable to pay in full, and they are desirous to convey all their property for the benefit of their creditors."

They thus convey "all their lands, tenements, hereditaments, goods, chattels, property and choses in action of every name, nature and description, wheresoever the same may be, except such property as may be by the constitution and laws of the state exempt from forced sale."

Upon its face the deed contemplates three parties or sets of parties: the parties of the first part (the makers), the party of the second part (the assignee), and the parties of the third part, who are described as "the several persons, creditors of the parties of the first part, who have executed or shall hereafter execute or accede to these presents."

The closing sentence of the deed is as follows: "And the parties of the third part, by their signatures hereto, express their consent to this arrangement, and accept the provisions for them made herein."

There are no signatures to the deed except those of the makers and the assignee; nor is there in the record any evidence that the creditors, or any of them, had signified in any way their acceptance of the terms of the deed.

We apprehend, however, that creditors would not be limited to the method of expressing their assent which is suggested in the deed.

The deed of assignment was sufficient in its terms to pass to the assignee all the property, whether partnership or individual, which belonged to the makers, and was not void. See Coffin v. Douglass, 61 Tex., 406.

Since this case was decided in the court below, many of the questions discussed by counsel have been definitely settled. See Coffin v. Douglass, supra, and Keating v. Vaughn, 61 Tex., 518.

The principal and most plausible objection which appellants urge against the validity of the assignment is this:

They allege that M. M. Terry owned no property of any kind; that he was not a partner in the business of Mrs. Rachael Terry;

that he was in debt, and that he was made a party to the deed of assignment for the fraudulent purpose of procuring, if possible, a release or payment of his individual debts with funds which should have gone to the payment of the debts of Mrs. Terry.

But if all this were true, it did not avoid the assignment or justify the seizure of the goods by appellants.

Appellants insist that they are the separate creditors of Mrs. R. Terry, and that they became such by selling her goods with the distinct understanding that M. M. Terry had no interest in the business. In this they are sustained by the record.

But, admitting that this is so, still they need not have seized the property.

They could have had their rights protected by coming in under the assignment and placing the facts before the court, so that they could be acted on in the distribution of the proceeds of the property among the creditors and claimants.

If M. M. Terry really had no interest in the goods (as he claimed to have), the mere fact that he joined in the execution of the assignment would give no rights to his individual creditors.

Our courts, as courts of equity, have an enlarged jurisdiction in such cases. "General assignments," says Mr. Justice Roberts in Carleton v. Baldwin, 22 Tex., 730, "in trust for the benefit of creditors, with the rules pertaining to them, . . . may be said to be the creatures of courts of equity."

The act of July 24, 1879 (R. S. App., p. 6), instead of limiting has rather strengthened and enlarged their jurisdiction.

It was passed in order that the property of those who cannot pay their debts, and who make assignments, may be disposed of under the eye of the court, and the proceeds equitably distributed among their creditors without unnecessary cost and expense.

It is said in the brief of counsel for appellants that the assignee had not given a bond. The record contains no intimation of the sort, nor was any such objection made to the assignment when it was offered in evidence, though objections were made to its introduction and a bill of exceptions reserved. If such were the fact, the fourteenth section of the act above referred to was an ample remedy to the parties interested in the property.

Without noticing the remaining objections to the judgment, our opinion is that it should be affirmed.

AFFIRMED.

[Opinion adopted November 28, 1884.]