LEON & H. BLUM v. W. L. WELBORNE ET AL.

(Case No. 1278.)

1. CLAIM AGAINST ESTATE.— In a suit by the assignee of an insolvent debtor against an attaching creditor and the administrator of the sheriff who executed the writ, no presentation of the claim for damages to the administrator need be averred.
2. ASSIGNEE.— The district court has power to appoint an assignee to execute the trust, after the death of an assignee appointed by an insolvent debtor.
3. PLEADING.— In a suit by the assignee of an insolvent debtor against an attaching creditor for damages resulting from the attachment, the answer is defective if it fails to allege that the assignor was not insolvent and that he did not act in contemplation of insolvency in making the assignment.
4. ASSIGNMENT.— When an assignment for the benefit of creditors is made under the statute, the rights of the creditors attach to it, and no act of the assignor or of the assignee, or of both, at the time the assignment is made, or preceding it, but in contemplation of it, done with intent to defeat, delay or defraud creditors, will authorize a creditor to treat the assignment as void, or justify his attachment of the assigned property to the prejudice of other creditors.

APPEAL from Gregg. Tried below before the Hon. John C. Robertson.

The opinion states the case.

*T. P. Young* and *Taylor & Morrison,* for appellants.

I. All claims for money against the estate of a deceased person, which are susceptible, on well established principles of law, of being reduced to a specific and definite sum, must be presented to and rejected by the administrator before a suit can be maintained on them. Garrett *v.* Gaines, 6 Tex., 441; R. S., art. 2036; Hall *v.* McCormick, 7 Tex., 269; Danzy *v.* Swinney, 7 Tex., 617–8.

II. In case of vacancy in the office of assignee in an assignment for the benefit of creditors, a successor can only be appointed by a

suit for that purpose before a court of competent jurisdiction and in due process of law. Const. of 1876, art. V, sec. 1, and art. I, sec. 19; *Ex parte* Towles, 48 Tex., 413; Lane *v.* Williamson, 52 Tex., 335; Cooley on Const. Lim., top p. 89, note 2 (3d ed.); id., p. 353, note 2, and pp. 354–6.

III. An assignment for the benefit of creditors, made since the passage of the act entitled "An act in relation to assignments, and to regulate the same and the proceedings thereunder" (Acts 1879, p. 57), when executed by the assignor and assignee as a means of carrying out a conspiracy to defraud the creditors of the assignor, may be treated as a nullity by any one of the creditors affected thereby, and the property so attempted to be conveyed attached as the property of the assignor. Acts of 1879, p. 57; Van Hook *v.* Walton, 28 Tex., 76; 22 Tex., 708, 732; Burrill on Assignments, p. 441, sec. 320, and p. 671, sec. 501.

*John W. Duncan,* for appellees.

I. There was no error in the ruling of the court, for this is a suit for damages for a tort, and the claim need not have been presented to the administrator before suit. Garrett *v.* Gaines, 6 Tex., 441; Bullion *v.* Campbell, 27 Tex., 655; Merle *v.* Andrews, 4 Tex., 214; Ferrill *v.* Mooney, 33 Tex., 219; Evans *v.* Hardeman, 15 Tex., 483; King *v.* Cassady, 36 Tex., 538; Robinson *v.* McDonald, 11 Tex., 389, 390.

. . . V. Appellants had no right to treat the assignment as a nullity and levy their attachment on the goods in the hands of the assignee, for the property was in the hands of the assignee under a statutory proceeding, and was therefore *in custodia legis.* R. S., App., p. 7; Edwards *v.* Norton, 55 Tex., 406; Winslett *v.* Randal, Com. of Appeals, Tyler Term, November 9, 1881; Drake on Attachments, 6th ed., secs. 251, 494, 509, 511; High on Receivers, sec. 348; Winchester *v.* The Union Bank, 19 Am. Dec., 256; Farmers' Bank *v.* Beaston, 28 Am. Dec., 230–1; Cook *v.* Rogers, 31 Mich., 391; 50 N. Y., 83.

VI. The assignment and the proceedings thereunder being regular, it is a statutory proceeding *in rem,* and cannot be questioned collaterally by process purely legal; but if voidable, could only be declared so in a proceeding for that purpose. R. S., App., p. 7; Murchison *v.* White, 54 Tex., 78–86; McGowan *v.* Zimpleman, 53 Tex., 483; G. H. & S. A. R. R. Co. *v.* Louisa McDonald, 53 Tex., 510; Firebaugh *v.* Ward, 51 Tex., 414; Winslett *v.* Randal, Com. of Appeals (above cited); Grant *v.* McKinney, 36 Tex., 67; Swann *v.*

House, 50 Tex., 650; Smith *v*. Downs, 40 Tex., 60; Wiley *v*. Pavey, 28 Am. Rep., 678; Hopkins *v*. Ray, 1 Met., 79; Castle *v*. Lewis, 78 N. Y.. 131–35; 78 N. Y., 250.

STAYTON, ASSOCIATE JUSTICE.—This case, as stated by appellants in their brief filed in this court, is as follows:

"On the 14th day of December, A. D. 1881, J. A. W. Cheek, as the assignee of Louis Meyer, brought suit in the district court of Gregg county, Texas, against Leon & H. Blum, and T. E. Durham, administrator of M. L. Durham, appellants, for the recovery of fifteen hundred and twenty-three and thirty-nine one-hundredths ($1,523.39) dollars damages, the value of certain goods seized by virtue of attachments against one Louis Meyer, at the instance and in favor of Leon & H. Blum, by M. L. Durham, as sheriff of said county. The plaintiff alleged in his petition that said Meyer, a merchant doing business in Longview, in said county, being in failing circumstances and unable to pay his debts, on the 17th day of January, 1881, made an assignment of a certain stock of goods to Cheek for the benefit of his creditors; that said assignment was duly acknowledged and recorded; that Cheek gave bond, accepted the trust, and took possession of the property. The assignment was attached to and made a part of the petition, and provides that its benefits shall be limited to such creditors as will accept their *pro ratu* share of the estate and release Meyer from all liability on account of their respective claims; that Leon & H. Blum procured two writs of attachment to be issued on the 19th of January, 1881, from the county court of said county, in two suits instituted by them against said Meyer, to recover $1,200; and having placed said writs in the hands of M. L. Durham, procured him, on the 20th of January, 1881, to levy upon and seize said goods (a part of the stock assigned) while Cheek was carrying out the trust, and converted them to their own use, and prayed judgment. On February 8, 1882, the death of the plaintiff Cheek was suggested, and on the 3d day of July, 1882, W. L. Welborne, the appellee, filed in the case a paper styled a petition, making himself party plaintiff, and alleging that the judge of the seventh judicial district had appointed him assignee in place of said Cheek, deceased.

"To these pleadings the defendants presented the following issues of law and fact:

"*First.* Special exceptions to the petition of Welborne making himself plaintiff, because, first, the district judge had no power to appoint him assignee, but the successor should have been appointed by the district court in due course of law.

" *Second.*  A general demurrer to the petition.

" *Third.*  A general denial of its allegations.

" *Fourth.*  A special plea that said assignment was made by said Meyer with intent to hinder, delay and defraud his creditors, one of whom the firm of Leon & H. Blum was; that said Cheek knew of such intent, and acted in concert with said Meyer in carrying the same out; that he received from the store of Meyer, at daylight on the morning of the day when the assignment was executed, about $2,000 worth of goods, which he appropriated to his own use.  The court having sustained exceptions to said answer, the defendants filed a trial amendment, alleging that said assignment was made in furtherance of a fraudulent conspiracy entered into between Meyer and Cheek for the purpose of placing Meyer's property beyond the reach of his creditors.  The answer charged fraud fully and specifically.

" To these pleas the plaintiff urged general and special exceptions.

" The court overruled the exceptions to petition of Welborne making himself a party plaintiff, and the general demurrer to the petition, and sustained the general and special exceptions of the plaintiff to the defendants' answer, and upon the evidence rendered judgment for the plaintiff for $1,108 and costs.  The defendants having properly excepted to all of said rulings, upon overruling the motion for a new trial, gave notice of appeal."

This statement is in the main correct, and such additional statements of fact as are necessary to be stated in consideration of the case will be stated in the course of this opinion.

The first assignment of error calls in question the correctness of the ruling of the court upon the demurrer of defendants to plaintiff's petition, in that it was not alleged therein that the claim sued upon had been presented to the administrator of the estate of M. L. Durham, and that it had been by him rejected.

The action was based upon an alleged tort, and the damages claimed were not of that character, and so certain in their nature, as to require the claim to be presented to the administrator for allowance before suit could be brought upon it.

The second assignment called in question the power of the district judge to appoint an assignee instead of Cheek, the original assignee, upon his death.

The record discloses the fact that Welborne was appointed assignee by the district court for Gregg county while in session, after due notice, and there can be no doubt of the power of the court to make such an appointment even in the absence of a statute expressly authorizing it.

The next assignment calls in question the correctness of the ruling of the court in sustaining demurrer to defendants' answer; and this raises the main question in the case.

The manifest purpose of the act of March 24, 1879 (General Laws of 1879, p. 57), was to provide a mode by which such debtors as were contemplated thereby might make assignments of their property, simple in form, and yet effective to pass all of their property, real and personal, to an assignee for the benefit of creditors, except such as might be exempt from forced sale.

It further manifests an intention to make such assignments effective without reference to the form of the deed of assignment, provided it evidences an intention to pass to the assignee all the property of the debtor subject to forced sale, for the purpose of distribution among creditors, and is executed in substantial compliance with the requirements of the act.

It also evidences an intention to avoid much of the difficulty heretofore met with by the courts in determining whether assignments were valid or not, and to supply, by the law itself, much in which the deed of assignment might be deficient under the rules applicable to ordinary assignments.

The first inquiry which arises is, to what class or classes of debtors does the act apply?

The first section of the act is as follows: "*Be it enacted by the legislature of the state of Texas*, That every assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, shall provide, except as herein otherwise provided, for the distribution of all his real and personal estate other than that which is by law exempted from execution, among all his creditors, in proportion to their respective claims, and however made or expressed shall have the effect aforesaid, and shall be construed to pass all such estate whether specified or not," etc.

The statute embraces in terms two classes of debtors: first, insolvent debtors; second, debtors in contemplation of insolvency. These represent different phases of inability.

As said by Justice Field in Toof *v.* Martin, 13 Wall., 40, "The term insolvency is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning; but it is also used in a more restricted sense to express the inability of a party to pay his debts as they become due in the ordinary course of business." If insolvency be considered in the first sense here indicated, the allegations of the appellants' answer

were sufficient to show that Meyer was not insolvent; but if taken in the sense secondly indicated, it could not be told from the allegations of the answer whether he was insolvent or not.

A debtor is said to be in contemplation of insolvency when he contemplates not being, or not continuing to be, able to pay his debts in the ordinary course of business as they mature. Bump on Bankruptcy, 37, citing 1 B. R., 353; S. C., 2 Bin., 196.

If the answer was sufficient to show that Meyer was not insolvent, it was not sufficient to show that he was not in contemplation of insolvency, and in this respect the court did not err in sustaining the demurrer.

The other grounds upon which it is claimed that the answer should have been sustained are that property was delivered by Meyer to Cheek, the original assignee, fraudulently, just before the assignment, and that he was fraudulently appropriating the same; and that Meyer had not turned over to the assignee a sum of money which he had on hand; and that Cheek was abusing his trust by fraudulently disposing of the property which he did receive.

These matters we will consider in their order. If Meyer, for an improper purpose, before the assignment, delivered property to Cheek, under the first and ninth sections of the act under which the assignment was made, the property therein passed to the assignee as a part of the trust fund for the benefit of creditors; and the same may be said of any money or other property, other than that exempt, which Meyer may have retained.

The ninth section declares that "all property conveyed or transferred by the assignor previous to and in contemplation of the assignment, with the intent or design to defeat, delay or defraud creditors, or to give preference to one creditor over another, shall pass to the assignee by the assignment, notwithstanding such transfer."

The first section declares the assignment, however made or expressed, shall be construed to pass all of the estate of the debtor, real and personal, except such as is exempt from execution.

In view of these provisions, the assignment passed all of the property of the debtor except that exempt; as well that in his possession or owned by him at the time the assignment was made, as that which he may have fraudulently attempted to convey; and neither the fraud of the assignor nor of the assignee could annul the assignment, in which all creditors might have an interest.

When the assignment is completed, the rights of the creditors attach to it, and no act of the assignor or of the assignee, or of

both, at the time the assignment is made, or preceding it, but in contemplation of it, done with intent to defeat, delay or defraud creditors, will authorize a creditor to treat the assignment as void, and by process to appropriate the property to the payment of his debt, to the prejudice of other creditors.

If property has been fraudulently conveyed in contemplation of the assignment, the ninth section of the act provides that "the assignee, or, in case of his neglect or refusal, any creditor or creditors, may in his name, upon securing such assignee against costs or liability, sue for, recover, collect and cause the same to be applied for the benefit of creditors, as other property belonging to the debtor's estate in the hands of the assignee."

The tenth section declares: "No assignment shall be declared fraudulent or void for want of any inventory or list, as provided herein, but if such list and inventory be not annexed and verified as provided in this act, it shall be *prima facie* evidence that the assignor has secreted and concealed some portion of the property belonging to his estate from his assignee, unless, upon the demand of the assignee or a creditor, such verified inventory and list be furnished to the assignee; and if any assignee or creditor shall have reason to believe that any debtor has concealed any of his property or estate for the purpose of defrauding his creditors, it shall be the duty of the district or county judge, upon application of such assignee or creditor, to cause such debtor to appear before him, either in vacation or term time, and disclose under oath any knowledge or information he or she may have relative to any such concealment."

The eleventh section provides: "If any assignor shall secrete or conceal from his assignee any portion of the property belonging to his estate other than that which is exempt from execution, or shall, previous to and in contemplation of the assignment, transfer any property with the intent or design to defraud his creditors, such assignor shall be adjudged guilty of a felony, and upon conviction thereof shall be punished by imprisonment and labor in the penitentiary for not less than two and not more than five years."

The ninth and tenth sections place in the hands of the creditors the power to sue for and recover any property which may have been fraudulently conveyed, as well as to discover, by an examination under oath from the assignor, whether or not he has secreted or concealed any property which should go to his creditors, and if so, to trace it; and the fourteenth section provides that if the assignee is unfaithful in the administration of the trust, which requires him to discover and secure all property which the act declares shall pass

by the assignment, that he then shall be removed and another be appointed in his place.

These several provisions of the act bear unmistakable evidence of the intention of the legislature that no act of the assignee nor of the assignor after the assignment is made, or preceding it, but in contemplation of it, however fraudulent the act may be, shall divest the right of the creditors to have the trust estate administered for their benefit in accordance with the spirit of the statute; and the act itself provides means by which such administration may be enforced in default of the faithful performance of his trust by the assignee.

To permit one or more of the creditors, whenever in their opinion the estate was not all delivered to the assignee, or when the assignee might, in their opinion, be acting in violation of his duty, to disregard the assignment and seize and have sold the trust estate, or any part of it, for the satisfaction of such dissatisfied creditors, would contravene the very purpose of the law, which was intended to provide for the equitable distribution of the proceeds of the estate of an insolvent or failing debtor.

What effect a fraudulent withholding by the debtor of any part of his estate which ought to go to his assignee might have upon a release executed to him by a creditor, under the third section of the act, in ignorance of such fraud, need not in this cause be determined.

There being no error in the judgment, it is affirmed.

Affirmed.

[Opinion delivered December 5, 1882.]