## CUNNINGHAM *v.* NORTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 74. Argued November 17, 1887. — Decided March 19, 1888.

Whether, in a deed of assignment by a debtor for the benefit of creditors made under a state statute, a disregard of and departure from some directions of the statute shall invalidate the assignment or only make the varying provision in it void, will depend upon the general policy of the statute — whether it is intended to restrain or to favor such assignments.

A provision in an assignment by a debtor for the benefit of his creditors under the statute of the State of Texas of March 24, 1879, Rev. Stat. Texas, 1879, App. 5, that any surplus shall be paid to the debtor, made in violation of the direction in § 16 of the statute that such surplus shall be paid into court, does not affect the validity of the assignment, but only invalidates the violating provision.

The words " all his lands, tenements, hereditaments, goods, chattels, property, and choses in action of every name, nature and description, wheresoever the same may be, except such property as may be by the constitution and laws of the State exempt from forced sale," are a sufficient description to convey all the debtor's estate, under the Texas statute of March 24, 1879, regulating assignments by insolvent debtors.

A statement in a deed of assignment by a debtor for the benefit of his creditors, that he " is indebted to divers persons in considerable sums of money which he is at present unable to pay in full " is a declaration of the insolvency of the grantor.

THIS was an action in the nature of trespass brought by an assignee of an insolvent debtor against a marshal of the

United States for levying upon goods of the debtor covered by the deed of assignment. The defendant contested the validity of the assignment. Judgment for defendant. 15 Fed. Rep. 853. Plaintiff sued out this writ of error. The case is stated in the opinion of the court.

*Mr. W. Hallett Phillips* for plaintiff in error.

*Mr. D. A. McKnight* for defendants in error. *Mr. E. John Ellis* and *Mr. John Johns* were with him on the brief.

*Mr. M. L. Crawford* also filed a brief for defendants in error.

Mr. Justice Bradley delivered the opinion of the court.

This action is in the nature of an action of trespass, brought by an assignee for the benefit of creditors against the marshal of the United States for the Northern District of Texas, for seizing, levying on and converting certain goods of one Wallace, which had been assigned to the plaintiff. The seizure by the marshal was made under an attachment issued out of the Circuit Court, at the suit of Naumberg, Kraus, Lauer & Co., who are also defendants in the present action. The plaintiff, in his petition, sets out his ownership, as derived under a deed of assignment, a copy of which is attached, and is in the words and figures following, to wit:

"The State of Texas, Kaufman County:

"This indenture, made the 24th day of October, A.D. 1881, between S. W. Wallace, of the first part, I. G. Lawrence, of the second part, and the several creditors of the party of the first part who shall hereafter accede to these presents, of the third part, witnesseth: That whereas the party of the first part is indebted to divers persons in considerable sums of money, which he is at present unable to pay in full, and he is desirous to convey all his property for the benefit of his creditors:

"Now, the party of the first part, in consideration of the

premises and of one dollar paid to him by the party of the second part, hereby grants, bargains, sells, assigns and conveys unto the party of the second part and his heirs and assigns all his lands, tenements, hereditaments, goods, chattels, property and choses in action of every name, nature and description, wheresoever the same may be, except such property as may be by the constitution and laws of the State exempt from forced sale; to have and to hold the said premises unto the said party of the second part, his heirs and assigns, but in trust and confidence to sell and dispose of said real and personal estate, and to collect said choses in action, using a reasonable discretion as to the times and modes of selling and disposing of said estate as it respects making sales for cash or on credit, at public auction or by private contract, taking a part for the whole where the trustee shall deem it expedient so to do, then in trust to dispose of the proceeds of said property in the manner following, viz.:

"First. To pay the costs and charges of these presents and the expenses of executing the trusts herein declared, together with all taxes which are a charge upon any of said property.

"Second. To distribute and pay the remainder of the said proceeds to and among all the parties of the third part who will accept thereof in full satisfaction of their claims against said party of the first part ratably in proportion to their respective debts.

"Third. To pay over any surplus, after paying all the parties of the third part who shall accede hereto as aforesaid, in full, to the party of the first part, his executors, administrators or assigns; and the party of the first part hereby constitutes and appoints the party of the second part his attorney irrevocable, with power of substitution, authorizing him, in the name of the party of the first part or otherwise, as the case may require, to do any and all acts, matters and things to carry into effect the true intent and meaning of these presents which the party of the first part might do if personally present; and the party of the second part, hereby accepting these trusts, covenants to and with each of the other parties hereto to execute the same faithfully; and the party

of the first part hereby covenants with the said trustee, from time to time and at all times when requested, to give him all the information in his power respecting the assigned property, and to execute and deliver all such instruments of further assurance as the party of the second part shall be advised by counsel to be necessary in order to carry into full effect the true intent and meaning of these presents; and the parties of the third part, by acceding hereto and by accepting the benefits herein conferred, hereby and thereby agree to and with the said party of the first part to release him from any and all claim or claims, debt or debts, demand or demands, of whatever nature, which they respectively have and hold against him; and this assignment is made for the benefit of such of the parties of the third part only as will consent to accept their proportional share of said estate of the said party of the first part, and discharge him from their respective claims.

"Witness our hands this 24th day of October, A.D. 1881.

"(Signed) "S. W. WALLACE.

"I. G. LAWRENCE."

The defendants filed an exception to the petition, in the nature of a demurrer, assigning therefor the following reasons, to wit:

"1st. Because the paper appended thereto and called an assignment or deed of assignment is not such in fact and does not on its face purport to convey to the creditors of S. W. Wallace, the grantor, all of his estate not exempt from forced sale for the benefit of his creditors.

"2d. Said deed is, only purports to be, for the benefit of such creditors as will accept it and release the said Wallace from his debts due to them, reserving to said Wallace all of the estate not used in the payment of said accepting creditors, and directing the plaintiff Lawrence to pay to him all that part of the estate not appropriated by the accepting creditors.

"3d. Said deed shows on its face that it was and is not an assignment under the statute, and that the trust was to be administered out of the court.

"4th. It is not shown or assigned that any creditors have accepted such assignment.

"5th. The petition shows that the creditors at whose suit the attachment was levied, to wit, Naumberg, Kraus, Lauer & Co., were and are non-residents of the State of Texas, and that they reside in New York.

"6th. Said deed does not show that said Wallace was insolvent or in contemplation of insolvency.

"7th. Said deed shows that the property pretended to be conveyed was to be disposed of by agents appointed by said Wallace or by his authority, and that Lawrence was but an agent and not a grantee."

This demurrer being sustained, the petitioner had leave to amend, and did so by an averment that after the execution of the assignment, and within the time allowed by law, the following named creditors of Wallace had come in and accepted under the same, to wit: Holt, Rivers & Corley, $108.40, [and 21 others named,] the total amount of whose claims aggregated over $14,000; and it was averred that the indebtedness so proven up against Wallace was largely in excess of the assets that came to the plaintiff's hands, including the property attached by the marshal.

The demurrer was still sustained, notwithstanding the amendment, and judgment was rendered for the defendants: to reverse which this writ of error was brought.

The assignment in question was made under a law of the State of Texas passed on the 24th of March, 1879, immediately after the repeal of the national bankrupt law, and evidently intended to take the place of that law, as well for the benefit of creditors as that of insolvent debtors. Its main object seems to have been to secure a speedy appropriation of all the property of an insolvent debtor, willing to make an assignment, to the payment of his debts, so far as it might be adequate for that purpose. As an encouragement to the making of such assignments, the law provides that, if the debtor so desires, he may make his assignment for the benefit of such creditors as will accept their proportional share of his estate and discharge him from their respective claims. And the

whole statute is evidently framed with a view to make the proceedings as simple as possible, and to obviate technical objections to their validity.

The principal provisions of the act, bearing upon the questions raised in this case, are as follows, to wit:

Section 1 declares that "every assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, shall provide, except as herein otherwise provided for, a distribution of all his real and personal estate, other than that which is by law exempt from execution, among all his creditors in proportion to their respective claims, and however made or expressed shall have the effect aforesaid, and shall be construed to pass all such estate whether specified or not."

Section 2 requires an inventory to be annexed containing a list of all the creditors of the debtor, with their residence, the amount due to each, and the consideration thereof, and whether any judgment or security exists therefor, and an inventory of all the debtor's estate, with an affidavit of the truth thereof; but it is declared in § 10, that no assignment shall be declared fraudulent or void for want of any inventory or list; but it may be required by the assignee.

Section 3 enacts as follows: "Any debtor, desiring so to do, may make an assignment for the benefit of such of his creditors only as will consent to accept their proportional share of his estate, and discharge him from their respective claims, and in such case the benefits of the assignment shall be limited and restricted to the creditors consenting thereto; the debtor shall thereupon be and stand discharged from all further liability to such consenting creditors, on account of their respective claims, and when paid they shall execute and deliver to the assignee for the debtor a release therefrom."

Section 4 provides for notice of his appointment to be given by the assignee.

Section 5. "The creditors of the assignor consenting to such assignment shall make known to the assignee their consent in writing, within four months after publication of the notice provided in the preceding section, and no creditor not assent-

ing shall receive or take any benefit under the assignment; provided, however, that any creditor who had no actual notice of such assignment may make known his assent at any time before any distribution of assets, under the assignment, has been made."

Section 8. "Any creditor not consenting to the assignment may garnishee the assignee for any excess of such estate remaining in his hands after the payment of consenting creditors the amount of their debts, and the costs and expenses of executing the assignment."

Section 9 provides that property conveyed in contemplation of an assignment, with intent to defeat, delay or defraud creditors, or to give preferences, shall pass to the assignee notwithstanding such transfer, without affecting the validity of the assignment.

Section 16 declares that: "Whenever any assignee shall have fully performed the duties of his trust, and desires to be finally discharged therefrom, he may make a report of his proceedings under the assignment, showing the money and assets that have come into his hands, and how the same have been disbursed and disposed of, the truth of which shall be verified by his affidavit, and such report shall thereupon be filed and recorded in the office of the county clerk of the county in which the assignment is recorded, and no action shall be brought against such assignee by reason of anything done by him under the assignment, as shown by his report, unless the same be brought within twelve months from the time of the filing thereof, as aforesaid; and any moneys or funds on hand shall be deposited in the District Court subject to be paid out upon the decree of said court."

The assignment in the present case was made under the 3d section of the act, namely, for the benefit of such creditors of the debtor as would consent to accept their proportional share of his estate, and discharge him from their claims; and the principal objection made to it is, that it directs the assignee to pay over to the assignor any surplus remaining after paying all the consenting creditors in full, instead of paying such surplus into court, as required by the 16th section of the act.

It is contended that this not only violates the law, but is a reservation for the benefit of the debtor, tending to delay and hinder those creditors who do not accede to the terms of the assignment, in the collection of their debts. We do not see the force of the latter part of the objection, namely, that the stipulation referred to tends to delay and hinder creditors. The law itself, in § 8, takes care that the remedy of non-consenting creditors shall not be suspended for a moment. By that section it is provided, that any such creditor may garnishee the assignee for any excess of the estate remaining in his hands after the payment of the consenting creditors, and the costs. Of course, the stipulation in the assignment, that the balance should be paid to the assignor, was intended and understood to be subject to this right of garnishment. Such a qualification of the stipulation would be a condition in law. We do not see, therefore, how it can be said that the terms of the assignment were intended to delay and hinder creditors. The surplus referred to in the stipulation must, by intendment of law, have been only such surplus as might remain after satisfying the garnisheeing, as well as the consenting, creditors.

But conceding that, as to the surplus still remaining, the stipulation in the deed is not in conformity with the requirement of the 16th section, the question still remains whether the stipulation only is to be regarded as void, or whether the whole deed is void by reason of the stipulation. And the answer to this question depends upon the general policy of the statute. Is it intended to restrain assignments, or to aid and encourage them? If restraint is the object, the regulations prescribed may, according to a well-settled course of decisions in the state and federal courts, be regarded as conditions precedent, necessary to be observed in order to render an assignment valid. If aid and encouragement are intended to be given to assignments, in the interest of creditors as well as debtors, as a substitute for the bankrupt act, the courts may well disregard incidental variations from the law as void under its operation and sustain the assignment itself if it contains the main thing — the transfer of the entire property of

the debtor for the benefit of his creditors — and carry it out in accordance with the law for the purposes intended. A careful examination of the act convinces us that its policy is to favor assignments, and to give them such construction that they may stand rather than fall; and this, in the interest of creditors, quite as much if not more than in that of debtors. It will be noted that some of its express features look in that direction; and the whole act taken together corroborates this view. And such is the light in which it is viewed by the supreme court of Texas.

In the case of *Blum & Blum* v. *Welborne et al.,* 58 Texas, 157, decided in December, 1882, it was held that when an assignment for the benefit of creditors is made under the statute, the rights of the creditors attach to it, and no act of the assignor or of the assignee, or of both, at the time the assignment is made, or preceding it, but in contemplation of it, done with intent to defeat, delay, or defraud creditors; will authorize a creditor to treat the assignment as void, or justify his attachment of the assigned property to the prejudice of the other creditors. In that case, as in this, the assignment was made under the 3d section of the act, for the benefit of such creditors as would accept their dividends in satisfaction of their claims. One of the non-consenting creditors attached the property assigned. The assignee having died, a substituted assignee sued the attaching creditors for damages. They pleaded that the debtor fraudulently disposed of a large amount of goods to his assignee, immediately before the assignment, with intent to hinder, delay and defraud the creditors. This plea was overruled on the ground above mentioned. The court said: "The manifest purpose of the act of March 24, 1879, (General Laws of 1879, p. 57,) was to provide a mode by which such debtors as were contemplated thereby might make assignments of their property, simple in form, and yet effective to pass all of their property, real and personal, to an assignee for the benefit of creditors, except such as might be exempt from forced sale. It further manifests an intention to make such assignments effective without reference to the form of the deed of assignment, provided it evi-

dences an intention to pass to the assignee all the property of the debtor subject to forced sale, for the purpose of distribution among creditors, and is executed in substantial compliance with the requirements of the act. It also evidences an intention to avoid much of the difficulty heretofore met with by the courts, in determining whether assignments were valid or not, and to supply, by the law itself, much in which the deed of assignment might be deficient under the rules applicable to ordinary assignments." p. 16. The court then proceeds to the particular case, and in view of the provisions of the first and ninth sections of the act declares that "the assignment passed all the property of the debtor except that exempt; as well that in his possession or owned by him at the time the assignment was made, as that which he may have fraudulently attempted to convey; and neither the fraud of the assignor, nor of the assignee, could annul the assignment, in which all creditors might have an interest. When the assignment is completed, the rights of the creditors attach to it." p. 162. Again, "No act of the assignee, nor of the assignor, after the assignment is made, or preceding it, but in contemplation of it, however fraudulent the act may be, shall divest the right of the creditors to have the trust estate administered for their benefit in accordance with the spirit of the statute; and the act itself provides means by which such administration may be enforced in default of the faithful performance of his trust by the assignee. To permit one or more of the creditors, whenever in their opinion the estate was not all delivered to the assignee, or when the assignee might, in their opinion, be acting in violation of his duty, to disregard the assignment and seize and have sold the trust estate, or any part of it, for the satisfaction of such dissatisfied creditors, would contravene the very purpose of the law, which was intended to provide for the equitable distribution of the proceeds of the estate of an insolvent or failing debtor." p. 164.

In another case, decided at the same time, *Donoho* v. *Fish*, 58 Texas, 164, where the whole property of the debtor was not assigned, as where two partners made an assignment of their partnership property only, (and not their individual

property,) for the benefit of such creditors only as would accept their proportional share thereof, under the third section of the act, it was held that such an assignment failed to comply with the fundamental requisite of the act, that all the debtor's property, not exempt from forced sale, must be assigned; and, therefore, that it was void as against attaching creditors. The same views, however, were expressed by the court, as in the previous case, as to the liberal construction which would be placed upon an assignment which purported to convey all the property of the debtors, however defective it might be in form.

In the case of *Keating* v. *Vaughan*, 61 Texas, 518, decided in May, 1884, the very point now under consideration came before the court, and it was held that the stipulation that the assignee should pay the surplus to the assignor after the consenting creditors were paid in full, did not vitiate the deed of assignment. The court say:

"Under the statute it is unimportant whether the assignor, by the assignment, reserves to himself any surplus which may remain after payment of the consenting creditors, for the statute itself regulates that matter, independent of what the terms of the deed may be in this respect, if the assignment be, as is this, under the third section of the act which, with some of the following sections, refers to assignments made for the benefit of consenting creditors only. Under such an assignment strictly, other creditors than those consenting to the release of the debtor do not take at all, but the eighth section of the act provides that non-consenting creditors may garnishee the assignee for any excess of such estate remaining in his hands after the payment to the consenting creditors of their debts and the costs and expenses of executing the assignment.

"If non-consenting creditors should not pursue that course, in case of an excess, the sixteenth section of the act, when the trust has been executed and the assignee desires to be discharged therefrom, provides that the excess shall be paid into the District Court, subject to be paid out upon the decree of that court, which would, no doubt, be so made as to protect

non-consenting creditors who might show themselves entitled thereto, and take the necessary steps to fix a legal claim on the fund, in so far as the fund would go; if, however, no claim to such a fund was made by any creditor, the court after the lapse of a reasonable time, would certainly direct the excess to be delivered to the assignor. Thus the statute regulates the whole matter, and must control if there be any conflict between its provisions and the deed. If the property passes to the assignee for the benefit of creditors generally, or for the benefit of consenting creditors alone, no provision which the assignee can make in the deed can interfere with the distribution of the estate as the statute requires." p. 523.

It is suggested by the defendants' counsel that this decision was made in view of an amendatory statute passed in April, 1883, which declares "that no fraudulent act, intent or purpose of the assignor or assignee shall have the effect to defeat the assignment, or to deprive the creditors consenting thereto from the benefits thereof, but any such fraudulent act, intent or purpose on the part of the assignee shall be a sufficient cause for his removal, as being an unsuitable person to perform the trust, and any consenting creditor may be or become a party to prosecute or defend in any suit or proceeding necessary or proper for the enforcement of his rights under such assignments, or for the protection of his interests in the assigned property." It is contended that this provision renders null and void stipulations like the one in question, so that the deed of assignment may have the effect and operation intended by the statute of 1879, notwithstanding such stipulation; and that the decision in *Keating* v. *Vaughan* was based on the amendment. But this cannot be true, inasmuch as the assignment in that case was made on the 9th of May, 1883, and the amendment did not go into effect until the 12th of July of that year. It carries out, however, the policy which we have supposed to pervade the act of 1879, of securing to the creditors of an insolvent debtor, making an assignment, a speedy and just appropriation of all his property to the payment of his debts.

In the case of *Schoolher* v. *Hutchins*, 66 Texas, 324, the most

recent reported case on the subject, the deed of assignment (which was also executed before the amendment of 1883 took effect) authorized the assignee to sell the property at public or private sale, to employ the assignors to aid in the disposition of the property, with such compensation as he might deem proper, and to do various other things which the defendants contended were not lawful. But the court said: "If the deed of assignment attempted to confer powers which, under the law, an assignee could not legally exercise in the execution of the trust, this would not be a sufficient reason for holding an assignment invalid. When an assignment is made under the statute the rights of creditors vest, and they can compel the assignee to exercise the powers which the law expressly, or by implication, confers upon him, as can they restrain him if he attempts to exercise powers which the law does not confer upon him." p. 329.

This view of the proceeding, as being wholly governed and controlled by law, and regarding as null and inoperative stipulations and powers in the deed contrary to, or not in conformity with, the provisions of the statute, and not as affecting the validity of the deed itself, so long as the main purpose is accomplished, of appropriating the whole of the debtor's property to the payment of his debts, seems to us so in harmony with the spirit and purpose of the act, that we do not hesitate to adopt it. We have given careful attention to the opinion of the Circuit Court in the present case, but have failed to be convinced by it, and feel constrained to express our concurrence in the line of decisions of the Supreme Court of Texas.

One or two other points are made in the briefs of counsel against the validity of the deed, which require but a brief notice. They are substantially met by the considerations already adverted to.

First. It is objected that the deed does not convey all the debtor's estate, not exempt from forced sale, for the benefit of his creditors. It is a sufficient answer to say that it does, in terms, convey "all his lands, tenements, hereditaments, goods, chattels, property and choses in action of every name,

nature and description, wheresoever the same may be, except such property as may be by the constitution and laws of the state exempt from forced sale." According to the decisions of the Supreme Court of Texas, this general description is sufficient, under the statute of 1879, to convey all the debtor's property. *Blum & Blum* v. *Welborne et al.*, 58 Texas, 157, 161. The first section of the act declares that the assignment, however expressed, shall be construed to pass all the debtor's real and personal estate, whether specified therein or not.

Secondly. It is objected that the deed of assignment does not, on its face, show that the assignor was insolvent, or in contemplation of insolvency. The obvious answer is, that if this is a necessary requirement, the deed does state that the assignor " is indebted to divers persons in considerable sums of money, which he is at present unable to pay in full." When a person is unable to pay his debts, he is understood to be insolvent. It is difficult to give a more accurate definition of insolvency. The objection is without foundation.

We do not observe any other objection which it is necessary specially to notice.

*The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to proceed therein according to law.*