# IN THE MATTER OF THE BANKRUPTCY OF W. H. ALDRICH.

## APPEAL FROM JUDD, C. J.

HEARING, SEPTEMBER 18, 1893. DECISION, DECEMBER 1, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A person is not entitled to be adjudged a bankrupt on his own petition (under Sec. 2, Ch. XXXV, Laws of 1884) unless he is insolvent.

A person who owes debts which are due to the amount of $3,000, which he cannot pay, is insolvent, although he has an income for life which, though sufficient in time, cannot in any way at present be realized upon for sufficient to pay his debts.

OPINION OF THE COURT, BY FREAR, J.

The question is whether W. H. Aldrich is entitled to be adjudged a bankrupt upon his own petition. It appears that he owes debts, due at the time of his petition, aggregating a little more than three thousand dollars; and that his property, aside from articles of household furniture of little value, consists of a bequest during his life of a portion of the income of a part of the residue of the estate of his deceased father, who by will, after making certain specific devises and bequests, gave the residue of his estate to trustees upon various trusts, the third of which is:

"To appropriate and pay out of the net rents, income, issues and profits derived from or yielded by the equal one-fourth ($\frac{1}{4}$) part of such residue of my estate, and from the successive investments thereof, hereinbefore provided for, so much thereof as may be required to be expended for the proper education of the children of my said son William Holt Aldrich, and to pay and deliver the remainder of such net rents, income, issues and profits to my said son, William

Holt Aldrich, for and during the period of his natural life, and in quarterly, semi-annual or annual installments, as he may elect; *provided always*, and it is a positive and specific condition of this bequest, that said portion of said rents, income, issues and profits, shall be paid to him personally, and only upon his individual receipt therefor; also, that he shall have no power to anticipate said rents, income, issues and profits, or any part thereof, nor to alienate, transfer, convey, or dispose of the same, or of any interest therein, or part thereof; nor shall the same be involuntarily alienated by him, or be subject to attachment or execution, or to be levied upon or taken upon any process, for any debt or debts which he may contract, or in satisfaction of any demands or obligations which he may incur."

There are certain limitations over upon the death of this son. The amount of the income in question is wholly uncertain, but it seems to be admitted to be sufficient to pay the debts in the course of time, or even at present, if available by way of anticipation.

The statute, in Section 2, which provides for voluntary bankruptcy, authorizes "any person owing debts to the amount of five hundred dollars" which have not been contracted in a fiduciary capacity, to petition to be adjudged a bankrupt. There is no express qualification in the statute, as to whether the debts must be due or not, or whether there must have been a failure to pay them when due, or whether the debtor must be insolvent or not. Considering the general purpose of the statute, however, it is plain that the legislature could not have intended to allow "any person [whether solvent or not] owing debts [whether due or not], to the amount of five hundred dollars" to become a bankrupt. There must therefore be some implied qualification or restriction, there must be some implied circumstance or circumstances, in addition to the mere fact of owing debts to the prescribed amount. But what? Counsel for the alleged bankrupt contends that it is sufficient if the debtor in addition to owing debts has committed any of the acts

enumerated in Section 1 of the statute, which provides for the involuntary bankruptcy, upon the petition of his creditors, of "every person owing debts to the amount of five hundred dollars who shall refuse or fail to make payment of any of his just demands for ten days after the same shall mature, or who shall depart the kingdom with the intent to hinder, delay or defraud his creditors, or who shall secrete himself, or keep his house to hinder, delay, defraud or avoid his creditors, or to hinder or delay the service of legal process for the collection of any debts or who shall make any fraudulent or secret conveyance of his property to any person or persons, or make any secret removal or other disposition of his property for the purpose of hindering, delaying or defrauding his creditors." This contention is unsound. It would allow the debtor to take advantage of his own wrong to the injury of his creditors. The statute is designed for the benefit of the creditors as well as of the debtor. So far as it provides for involuntary bankruptcy, it is designed chiefly for the benefit of the creditors, enabling them to protect themselves, so far as possible, from loss, which might otherwise result from either the wrongful acts or the misfortune of the debtor. So far as it provides for voluntary bankruptcy, it is designed chiefly for the benefit of the debtor, enabling him to protect himself from attacks from his creditors when through misfortune or circumstances which the law does not regard as wrongful acts or omissions on his part, he is unable to meet his engagements. The only circumstance mentioned in Section 1 which, coupled with the owing of debts to the amount prescribed in Section 2, might enable a debtor to become a voluntary bankrupt without taking advantage of his own wrong, is, the "failure to make payment of any of his just demands for ten days after the same shall mature," and even such failure must, of course, by implication, not be the result of what the law would recognize as the wrongful act or omission of the debtor. This would practically require the debtor to be insolvent, to enable him to become a voluntary bankrupt. And this is the contention

of counsel for the creditors—that the debtor must be insolvent. This also seems reasonable, and is supported by the fact that the old law (Civil Code, Section 962) provided that the debtor could become a bankrupt upon his own petition, only "upon finding himself insolvent," in addition to owing . debts to a certain amount. The omission of this clause in the new Bankrupt Act of 1884 does not appear to have been made with the intention of altering the law in this respect. It was probably an oversight.

The question then is, was W. H. Aldrich insolvent? What constitutes insolvency? It is inability to pay one's debts, but *how* and *when?* All the authorities agree that it is a *present* inability. It is immaterial what the prospects for the future are. "Insolvency means inability to pay debts as they mature and become due and payable, * * * without reference to the possibility or probability, or even certainty, that at a future time, on the settlement or winding up of all his [the debtor's] affairs, his debts will be paid in full out of his property. * * * To hold that the probability that if the estate could be judiciously managed, it would, after the lapse of some indefinite time, at prices corresponding with its then estimated value, produce enough to pay the creditors, if they also would wait and not force sales by judgments and executions, is to constitute proof of solvency within the meaning of the law, would be neither sensible nor just. * * * A man who is unable to pay his debts out of his own means, or whose debts cannot be collected out of such means by legal process, is insolvent; and although it may be morally certain that with indulgence of his creditors, in point of time, he may be ultimately able to satisfy his engagements in full. The term insolvency imports a present inability to pay. The probable or improbable future condition of the party in this respect does not affect the question. If a man's debts cannot be paid in full out of his property by levy and sale on execution, he is insolvent within the primary and ordinary meaning of the word, and particularly in the sense in which the word is used

in the bankruptcy act." Bump on Bankruptcy, 412; *Cunningham vs. Norton*, 125 U. S., 77; *Dutcher vs. Wright*, 94 U. S., 557; *Wager vs. Hill*, 16 Wall., 599; *Thompson vs. Thompson*, 4 Cush., 127. It is clear, therefore, that if W. H. Aldrich could meet his engagements only by waiting until his income under his father's will should accumulate to an amount equal to his indebtedness, he was not solvent. To hold otherwise would be to hold, contrary to both reason and authority, that insolvency is a present status evidenced by future contingencies. That would be to hold that one is not insolvent who, though deep in debts and without any property whatever, is in receipt of a salary or other income, or even is capable of earning, sufficient in time to pay off his indebtedness,—which would be untenable.

Was, then, W. H. Aldrich able to meet his engagements at the time of his petition? This raises the other question, *how* must one be able to meet his engagements in order to be solvent? The authorities seem agreed that, at least when traders are referred to, and when used in the sense of the bankruptcy acts, "insolvency" means inability to pay debts in legal tender. "Insolvency means an inability to pay debts * * * in that which is made * * * lawful money and a legal tender to be used in the payment of debts. * * Property is not a lawful tender in payment of debts, and a debtor has no right to pay a debt with property of any kind. Therefore, the amount of a trader's property is of no consequence, if such inability to pay matured debts in lawful money exists." Bump, *ubi supra:* Anderson, Law Dict.; Cent. Dict.; Am. & Eng. Encyc.; Title insolvency. Gauged by this standard W. H. Aldrich certainly was insolvent.

But "insolvency" has another, a popular meaning. "It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts," (Bump, Bankruptcy, 812) whether by direct distribution of his property among his creditors or by sale under legal process. No case has come to our knowledge in which the

word has been construed in this sense when used in connection with bankruptcy acts, although it has been said that "the term may, perhaps, have a less restricted meaning" when applied to other persons than when applied to traders (*Toof vs. Martin*, 13 Wall. 47, in which it was held that "if the bankrupts [traders] could not pay their debts in the ordinary course of business, that is, in money, as they fell due, they are bankrupt.") The word seems however to have this broader meaning when used as a test of the validity of voluntary assignments for the benefit of creditors (Burrill on Assignments, 38–40), but even then, a person is considered insolvent if the "present inadequacy of the debtor's means to satisfy his engagements  *  *  *  even in connection with the probable fact of ultimate solvency  *  *  *  is itself a matter of uncertainty, being dependent upon contingencies of various kinds which cannot be foreseen or estimated," or "where the property of the debtor is of a doubtful character, and may or may not, according to the circumstances, be sufficient to discharge his debts in full." Ib. 41. Taking, then, this broad definition, which is the most favorable to the creditors, and supposing for the sake of argument that this is the kind of insolvency contemplated by the statute, was W. H. Aldrich insolvent at the date of his petition? His interest in his father's estate could not be divided directly among his creditors at that time. The estate was in course of administration in the probate court. His interest was only an equitable life interest of uncertain amount. It was not subject to execution. Or could it even have been sold for sufficient to pay the debts? Being only a life interest (which itself is of uncertain duration) in the net income (after paying the uncertain expenses of the management of the estate and of the education of the children) of one-fourth of the residue (after certain specific devises and bequests) of an estate of uncertain amount, in course of administration, and with numerous conditions annexed to his interest, the effect of which would be, to say the least, uncertain until adjudicated

upon, who would be willing to purchase it, and for how much? No attempt has been made on the part of the creditors to show that W. H. Aldrich could by any possibility, not to say probability, have met his engagements either in money or property, or in any other way at the time he petitioned to be adjudged a bankrupt, and yet it is well settled that insolvency means only a present inability to pay.

No attempt has been made to show that the alleged bankrupt's inability to pay has been the result of his own wrong. On the contrary, the creditors knew that he was without means, and they gave him credit upon his expectations of what he was to receive under his father's will, the time to receive which had not, without any wrong on his part, then arrived. It is not claimed, and it certainly has not been proved, that in obtaining credit upon these expectations, the debtor acted fraudulently. If that can be shown, it will be good ground for refusing the debtor his discharge. Nor does it appear that the debtor, in seeking bankruptcy, had any wrongful motive, other than that, if any, which may be inferred from the fact, if fact it be, that his creditors would thereby be placed in a worse condition than they otherwise would be in. The debtor claims to have taken the bankruptcy proceedings in order to protect himself from the attacks of his creditors, his household furniture having been levied upon in execution at the instance of one of them. This was reason enough to justify his course of action, and no other reason or motive, if any existed, has been shown either directly or inferentially. It does not even appear that, as a result of his action, whether right or wrongful, he will reap any other advantage than that to which he is lawfully entitled under the bankruptcy act, or that his creditors will suffer any injury. If the conditions annexed to his interest by the terms of the will are in the nature of limitations, his interest would be determined either by his bankruptcy, or by an attachment by a judgment creditor. In either case neither he nor his creditors could reap any benefit from it. On the other hand, if the conditions are void as being merely

conditions repugnant to the estate devised, his interest may be reached either by his assignee in bankruptcy, or by judgment creditors. In either case the creditors receive the benefit of it. See *Graves vs. Dolphin*, 1 Sim., 66; *Brandon vs. Robinson*, 18 Ves., 429; *Rochford vs. Hackman*, 9 Hare, 475; *Nichols vs. Eaton*, 91 U. S., 716; *Tillinghast vs. Bradford*, 5 R. I., 205; 2 Jarm. Wills, 23-37; Perry, Trusts, Secs. 386, 555. Nor does it appear that a judgment creditor would be in any better position than an assignee by reason of the property being in another jurisdiction (California). If the property can be reached at all, it can be reached, at least so far as it may be personal property, by the assignee, who acts in this respect not by virtue of his authority as an officer of the court, but because he has the title to the bankrupt's property, which has been transferred to him from the bankrupt by operation of law. (See 3 Parsons, Contr., Ch. XII., Section 3), and so far as the property may be real estate, if any further conveyance should be required, the bankrupt must give it or be refused his discharge, in which case the creditors may proceed as they think best. In this particular case, it would seem that the assignee might act to better advantage than the individual creditors, inasmuch as the several debts are so small that it could scarcely pay the creditors severally to proceed in a foreign jurisdiction. But whether for the advantage of the creditors or not, they cannot prevent the debtor from becoming a bankrupt, unless they can show either that he is solvent or that he is acting in a manner which the law deems wrongful. This they have not shown.

The order appealed from revoking, on the petition of the creditors, the order adjudicating W. H. Aldrich a bankrupt should, therefore, be reversed and the original order should stand.

*F. M. Hatch*, for the creditors.

*A. P. Peterson*, for the bankrupt.