## TRACY *v.* TUFFLY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

No. 134. Argued November 22, 25, 1889. — Decided March 3, 1890.

The third section of the act of the legislature of Texas entitled " An act in relation to assignments for the benefit of creditors, and to regulate the same and the proceedings thereunder," passed March 25, 1879, provides that "any debtor, desiring so to do, may make an assignment for the benefit of such of his creditors only as will consent to accept their proportional share of his estate, and discharge him from their respective claims, and in such case the benefits of the assignment shall be limited and restricted to the creditors consenting thereto; the debtor shall thereupon be and stand discharged from all further liability to such consenting creditors on account of their respective claims, and when paid they shall execute and deliver to the assignee for the debtor a release therefrom." That section was amended by an act passed April 7, 1883, so as to provide that " such debtor shall not be discharged from liabilities to a creditor who does not receive as much as one-third of the amount due, and allowed in his favor as a valid claim against the estate of such debtor; " *Held*, that this legislation applied to limited partnerships formed under chapter 68 of the Revised Civil Statutes of Texas, adopted by an act passed March 17, 1879.

An assignment by a limited partnership consisting of one general partner

and one special partner, for the benefit of its creditors, may be executed by the general partner; and such assignment need not embrace the individual property of the special partner.

An assignment by a limited partnership for the benefit of its creditors is not void because the verified schedule attached to the assignment embraces a debt of the special partner, which cannot, under the statute, be paid ratably with the claims of other creditors.

The only effect of the failure of a limited partnership to state fully in the published notice the terms of the partnership is that the partnership shall be deemed general.

Circumstances stated under which creditors may be estopped to deny the existence of a partnership as a limited partnership.

While repeals of statutes by implication are not favored by the courts, it is settled that, without express words of repeal, a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject embraced by both, and to prescribe the only rules in respect to that subject which are to govern.

THE case, as stated by the court, was as follows :

The principal questions in this case arise under the laws of Texas relating to limited partnerships, and to assignments for the benefit of creditors. Before examining these laws, the facts out of which this litigation arises will be stated.

Prior to March 26, 1884, R. W. McLin and W. T. Tuffly were partners doing business at Houston, Texas, under the name of R. W. McLin & Co. On that day McLin died, his widow and two minor children surviving him. No administration was had upon his estate. At the time of his death the firm was largely indebted to various individuals and partnerships. Among the latter were Morrison, Herriman & Co., Dunham, Buckley & Co., and W. H. Lyon & Co., who are plaintiffs in error. After consultation with the agent of many of the creditors — the firms just named among the number — the surviving partner and the widow determined to form a limited partnership under the name of "W. T. Tuffly," which should assume the debts of R. W. McLin & Co. in consideration of the release, by creditors of the old firm, of the estate of R. W. McLin from liability for their debts. From a trial balance of the accounts of the old firm which Tuffly caused to be made, it appeared that after the payment of its debts the share belonging to R. W. McLin's estate was $6419.36. Mrs.

McLin having sold and transferred to Tuffly all the goods and merchandise belonging to the old firm, they executed the following certificate of the formation of a special partnership:

"STATE OF TEXAS, *County of Harris :*

"We, W. T. Tuffly and Mrs. Christine E. McLin, hereby certify that we have formed a copartnership, under the firm name of W. T. Tuffly, under which firm name the business of such copartnership shall be conducted.

"The general nature of the business intended to be transacted is a general retail and wholesale, if they see proper, fancy and staple dry-goods and notion establishment in the city of Houston, Texas. W. T. Tuffly is and will be the general partner of such partnership, resident of the city of Houston, Texas, and Mrs. Christine E. McLin is and will be the special partner of such partnership, whose residence is also in said city of Houston, Texas.

"The said Mrs. Christine E. McLin has contributed the sum of six thousand four hundred and nineteen and 36-100 dollars to the common stock. The said partnership is to commence on the 16th day of April, 1884, and to continue for the space of two years, to end on the 16th day of April, 1886.

"W. T. TUFFLY.

"CHRISTINE E. McLIN."

This certificate was duly acknowledged by Tuffly and Mrs. McLin on the day of its date, before a notary public of the county, who certified the fact under the seal of his office. And on the same day, as appears from the official certificate of that officer, W. T. Tuffly, as the general partner named in the certificate of partnership, certified, under oath, that Christine E. McLin, the special partner therein, "has contributed to the common stock of said partnership the sum specified in said certificate, and the said sum has in good faith actually been paid in cash." The record also contains the certificate of the county clerk, under the seal of his office, to the effect that the certificate of partnership, with the certificate of its authentication, was filed for registration in his office on the 25th day of

April, 1884, and was duly recorded on the 26th day of May of the same year.

In conformity with the direction of the clerk of the county court, the following notice was published in a designated newspaper for six successive weeks from April 26, 1884: "The undersigned give notice that they have formed a co-partnership under the firm-name of W. T. Tuffly, having the following terms, as will appear by their executed and recorded certificate: W. T. Tuffly is the general partner; Mrs. Christine E. McLin is the special partner, and has contributed to the common stock the sum of six thousand four hundred and nineteen 36-100 dollars. W. T. Tuffly. Christine E. McLin."

On the day of the formation of this partnership, April 24, 1884, numerous creditors of R. W. McLin & Co.—among the number, Morrison, Herriman & Co., Dunham Buckley & Co., W. H. Lyons & Co.—executed a written release in these words: "The undersigned, creditors of the late firm of R. W. McLin & Company, in consideration of the assumption of all the indebtedness of said late firm by the firm of W. T. Tuffly, composed of W. T. Tuffly, general, and Christine E. McLin, special partner, as appears by the certificates by them signed, hereby release the estate of R. W. McLin, deceased, from any and all liability on account of the obligations of said firm of R. W. McLin & Co., either by note or open account or otherwise."

W. T. Tuffly entered upon the business contemplated by the partnership between himself, as general partner, and Mrs. McLin, as special partner, and continued in its prosecution until the 23d of March, 1885, when he executed a writing of assignment, upon the construction and legal effect of which the decision of some of the questions in this case depends   It is in these words:

"STATE OF TEXAS, *County of Harris:*

"Whereas the firm of W. T. Tuffly, composed of W. T. Tuffly, the general partner, and C. E. McLin, as special partner, finding it impossible to pay its debts as they mature, and being desirous to have a distribution of all the property of said firm

and the property of the said W. T. Tuffly, partnership and individual, and wishing to avail himself of the provisions of the general assignment law in such cases made and provided : Now, therefore, in consideration of the premises and one dollar to me in hand paid, I, W. T. Tuffly, hereby assign and convey and deliver possession of all and singular my property and effects, of whatever name and nature, both personal and real, which I own as copartner and individually, and intend to include all property of which or in which I have any interest whatever, wherever the same may be, to Louis Tuffly, as assignee, for the purposes aforesaid, taking possession of the same and sell the same, collect and convert the same, and when so sold, collected and converted, to appropriate the same ratably or in full payment, as the case may be, of all my debts and the debts of the firm of W. T. Tuffly, said assignee to proceed under the law aforesaid. This assignment is intended for the benefit of all such of my creditors only as will consent to accept their proportional share of said property and estate so hereby conveyed, and discharge me, as aforesaid, from their respective claims, said assignee to take lawful compensation for his services herein and expenses and counsel fees necessary to aid him and enable him to carry out the purposes of this conveyance.

"Schedules are hereto attached, and made as particular as I can do at this time, but in any particular where they may be incorrect or insufficient in detail they will be corrected by me.

"In witness whereof I hereunto set my hand, at Houston, this March 23d, 1885.

"W. T. TUFFLY."

That deed of assignment was duly acknowledged, and to it were attached exhibits duly verified by the oath of W. T. Tuffly. These exhibits consisted of an inventory of the estate assigned and a schedule of the debts. In the latter appears a claim of Mrs. McLin of "$7798, notes, borrowed money." Louis Tuffly, the assignee, endorsed his acceptance of the trust on the back of the deed, and gave bond as assignee, which was approved by the judge of the 11th Judicial District of Texas, March 23, 1885, on which day the deed of assignment

and bond were filed for record in the proper office. The assignee took immediate possession of the stock of goods, wares and merchandise, belonging to the firm of "W. T. Tuffly," also of the furniture, shelves, counters and stationery in the store-house. The assignment was accepted by creditors (excluding Mrs. McLin) whose debts aggregated $7116.26. It was not accepted by Morrison, Herriman & Co., Dunham, Buckley & Co., or W. H. Lyon & Co. The assignee remained in possession of the property until March 31, 1885, on which day, under attachments sued out from the Circuit Court of the United States for the Eastern District of Texas, by the three firms just named, against the property of W. T. Tuffly, they were levied upon and taken by Tracy, marshal of the United States for that district. The latter refused to make a levy, and did not levy, until indemnifying bonds were executed in behalf of the attaching creditors; the latter knowing, when they sued out the attachments, that the property was in the possession of the defendant in error in virtue of the above deed of assignment.

Under the order of the court the attached property was sold and the proceeds of sale were brought into court and paid into its registry.

The present suit was brought by the assignee, in one of the courts of the State of Texas, against the marshal and the sureties on his official bond, the breach alleged being the illegal and wrongful seizure of the property in question, which was alleged to be of the value of $29,972.22. It was removed, upon the petition of the defendants, into the court below, upon the ground that their defence arose under and involved the construction of the Constitution and laws of the United States. *Bachrack* v. *Norton*, 132 U. S. 337. The plaintiffs in the attachment suits were, upon their motion, made parties defendant, as were, also, the various parties who executed indemnifying bonds to the marshal.

The result of a trial before a jury was a verdict and judgment for $17,000 against Tracy and the sureties on his official bond, and against the attaching creditors. There was, also, a verdict and judgment in favor of Tracy, upon the several in-

demnifying bonds given to him by those creditors, for the following amounts: $2500 against Dunham, Buckley & Co. and their sureties; $2600 against W. H. Lyon & Co. and their sureties; and $17,000 against Morrison, Herriman & Co. and their sureties. A motion for a new trial having been overruled, the defendants have brought the case here, and assign various errors of law as having been committed by the court below in its instructions to the jury, and in its refusal to grant instructions asked by the defendants.

The statutes of Texas relating to limited partnerships, and to assignments for the benefit of creditors are as follows:

By the Revised Civil Statutes of that State, which went into effect on the 1st day of September, 1879, it is provided that limited partnerships for the transaction of any mercantile, mechanical, manufacturing or other business, except banking or insurance, may be formed by two or more persons, with the rights and powers, upon the terms and subject to the conditions and liabilities, prescribed in chapter 68 of that revision.

Such partnerships may consist of one or more persons as general partners, and of one or more persons as special partners, the latter contributing in actual cash payments a specific sum to the common stock, but without liability for the debts of the partnership, beyond the fund so contributed by him or them to the capital. Art. 3443. The general partners only are authorized to transact business and sign for the partnership and to bind the same. Art. 3444. Persons desirous of forming such partnership are required to make and severally sign a certificate, containing: "1. The name or firm under which the partnership is to be conducted; 2. The general nature of the business to be transacted; 3. The names of all the general and special partners interested therein, distinguishing which are general and which are special partners, and their respective places of residence; 4. The amount of capital which each special partner shall have contributed to the common stock; 5. The period at which the partnership is to commence and the period at which it is to terminate." Art. 3445.

The certificate must be acknowledged before, and certified by, an officer authorized to take acknowledgments of convey-

ances of land, be filed in the office of the clerk of the county court of every county in which the partnership shall have places of business, and be recorded at large in each of such counties, in a book to be kept for that purpose, open to public inspection. With the original certificate and the evidence of its acknowledgment must be filed an affidavit of one or more of the general partners, stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash. Arts. 3446, 3447, 3448. "No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded; nor until an affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit all the persons interested in such partnership shall be liable for all the engagements thereof as general partners." Art. 3449. "The partners shall publish the terms of the partnership, when registered, for at least six weeks immediately after such registry, in such newspapers as shall be designated by the clerk in whose office such registry shall be made, and if such publication be not made the partnership shall be deemed general." Art. 3450. The affidavit of the publication, by the publisher of the newspapers in which the notice is published, filed with the clerk, is evidence of the facts therein contained. Art. 3451. "Every alteration which shall be made in the names of the partners, in the nature of the business or in the capital or shares thereof, or in any other matter specified in the original certificate, shall be deemed a dissolution of the partnership; and every such partnership which shall in any manner be carried on after any such alteration shall have been made shall be deemed a general partnership, unless renewed as a special partnership according to the provisions of the last article." Art. 3453. "The business of the partnership shall be conducted under a firm in which the names of the general partners only shall be inserted, without the addition of the word 'company,' or any other general term; and if the name of any special partner be used in such firm, with his privity, he shall be deemed a general partner." Art. 3454. "Suits in relation to

the business of the partnership may be brought and conducted by and against the general partners in the same manner as if there were no special partners." Art 3455. "No part of the sum which any special partner shall have contributed to the capital stock shall be withdrawn by him, or paid or transferred to him in the character of dividends, profits or otherwise, at any time during the continuance of the partnership; but any partner may annually receive lawful interest on the sum so contributed by him, if the payment of such interest shall not reduce the original amount of such capital; and if, after the payment of such interest, any profit shall remain to be divided he may also receive his portion of such profits." Art. 3456. "If it shall appear that by the payment of interest or profits to any special partner the original capital has been reduced, the partner receiving the same shall be bound to restore the amount necessary to make good his share of the capital with interest." Art. 3457.

Article 3460, which is the subject of much discussion by counsel, is in these words: "Every sale, assignment or transfer of any property or effects of the partnership made by such partnership when insolvent or in contemplation of insolvency, or after, or in contemplation of insolvency of any partner, with the intent of giving a preference to any creditor of such partnership or insolvent partner over other creditors of such partnership; and every judgment confessed, lien created or security given by any such partnership under the like circumstances and with like intent shall be void as against the creditors of such partnership." Article 3463 is as follows: "In case of the insolvency or bankruptcy of the partnership, no special partner shall, under any circumstances, be allowed to claim as creditor until the claims of all other creditors of the partnership shall be satisfied."

The revision of 1879 was adopted by an act passed March 17, 1879, the latter act going into effect July 24, 1879. It should be here stated that chapter 68 of the Revised Statutes is a reproduction, without material change, of the provisions of the act of May 12, 1846, entitled "An act for the regulation of limited partnerships." Laws of Texas, 1846, 279.

On the 24th of March, 1879, the legislature passed an act, entitled "An act in relation to assignments for the benefit of creditors, and to regulate the same, and the proceedings thereunder." Gen. Laws, Texas, 1879, 57. The first section of that act provides: "That every assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, shall provide, except as herein otherwise provided, for a distribution of all his real and personal estate, other than that which is by law exempt from execution, among all his creditors in proportion to their respective claims, and, however made or expressed, shall have the effect aforesaid, and shall be so construed to pass all such estate, whether specified therein or not, and every assignment shall be proved or acknowledged and certified and recorded in the same manner as is provided by law in conveyances of real estate or other property." The second section requires the debtor to annex to the assignment an inventory showing a full and true account of all his creditors, their place of residence, the sum due each, the nature and consideration of each debt, any existing judgment, mortgage, or security for such debt, and the character of the debtor's estate of every kind (excepting such as the law exempts from execution) with the incumbrances thereon. To this schedule must be annexed the affidavit of the debtor that it is a just and true account to the best of his knowledge and belief.

The third section, upon which the assignment involved in this suit rests, is in these words:

"SECTION 3. Any debtor, desiring so to do, may make an assignment for the benefit of such of his creditors only as will consent to accept their proportional share of his estate, and discharge him from their respective claims, and in such case the benefits of the assignment shall be limited and restricted to the creditors consenting thereto; the debtor shall thereupon be and stand discharged from all further liability to such consenting creditors on account of their respective claims, and when paid they shall execute and deliver to the assignee for the debtor a release therefrom." Gen. Laws, Texas, 1879, 57, 58.

The ninth section declares that "all property conveyed or transferred by the assignor, previous to and in contemplation of the assignment, with the intent or design to defeat, delay or defraud creditors, or to give preference to one creditor over another, shall pass to the assignee by the assignment, notwithstanding such transfer."

The remaining sections of the act prescribe the duties of the assignee, and regulate the administration of the trust.

The third section of the act of 1879 was amended by an act approved April 7, 1883, so as to provide that "such debtor shall not be discharged from liabilities to a creditor who does not receive as much as one-third of the amount due and allowed in his favor as a valid claim against the estate of such debtor." Gen. Laws, Texas, 1883, 46.

*Mr. George Hoadly* (with whom was *Mr. Frank S. Burke* on the brief) for plaintiffs in error.

I. The defendant in error, Louis Tuffly, is, I respectfully submit, in this dilemma. He brings this suit as assignee of W. T. Tuffly, a special partnership composed of W. T. Tuffly, general partner, and Christine E. McLin, special partner, but he is in this dilemma. If he assert that he is the assignee of a special partnership, then the assignment is void under section 3460 of the Revised Statutes of Texas. If he claim as assignee of a general partnership, he is confronted with these difficulties: *first*, that only one of the partners executed the assignment, the other being enrolled as a creditor to a large amount; and *secondly*, that the rulings of the court proceeded upon the theory that the partnership was special, not general, and cannot be sustained, if the conclusion be reached that this was really a general partnership.

II. The question of the legality of the assignment was presented by the general demurrer. The assignment is incorporated into the petition, and is upon its face illegal. The demurrer should have been sustained on the ground that the plaintiff counted on an assignment, which was expressly forbidden by the laws of the State of Texas. It admits the in-

solvency of the firm, that is, that it is unable to pay its debts in the ordinary course of - business. *Toof* v. *Martin*, 13 Wall. 40; *Buchanan* v. *Smith*, 16 Wall. 277. It provides for a preference of a part of the creditors (those who shall become parties to it) over the others in the distribution of the assets. This is expressly forbidden by section 3460 of the Revised Statutes of Texas relating to limited partnerships, which is not repealed or affected by the act of March 24, 1879. The former relates to limited partnerships; the latter to general partnerships.

It may or may not be reasonable and just to require the creditors of an individual or of a general commercial partnership, for whose benefit an assignment has been made, to elect between taking the benefits of the assignment with release of debtor, or retaining the liability of the debtor and giving up all claim upon the assigned fund. Clearly, this would not be just where no such choice is given to the creditor. To render this fair to the creditor, he must have the right to elect between the two resources; either to take his share in the fund, or to hold the liability of the debtor. In case of a limited partnership he has no such alternative, for, in the *first* place, he originally trusted, so far as the special partner is concerned, only the fund. He never has had and cannot retain the liability of the special partner. His alternative is not between a share in the fund and retaining the liability of the partners, but between a share in the fund which has already been pledged to him, and retaining the liability, not of the partners, but of the general partner only. For this reason it may well be supposed that when the legislature of Texas undertook to pass a general assignment law, they did not provide in express words, or otherwise, for the case of limited partnership. This had already been done, and, therefore, needed words of express amendment or repeal, if it were their intention to make a change. As they did not intend to make a change, they used no such language.

The act of March 24, 1879, contains no repealing clause. It is true it was passed on the 24th of March, 1879, while the Revised Statutes were reënacted on the 21st of February, 1879,

but, as there are no repealing words in it of any kind, shape or form whatever, the repeal of section 3460 is, if it be such, by implication only. But repeals, by implication are not favored. *Harford* v. *United States*, 8 Cranch, 109; *Wood* v. *United States*, 16 Pet. 342, 362; *McCool* v. *Smith*, 1 Black, 459; *Ex parte Yerger*, 8 Wall. 85, 105; *State* v. *Stoll*, 17 Wall. 425, 430; *Arthur* v. *Homer*, 96 U. S. 137, 140.; *Ex parte Crow Dog*, 109 U. S. 556, 570; *Chew Heong* v. *United States*, 112 U. S. 536, 550.

Both laws took effect *eo instanti*, so that the act of March 24 could not have the effect to repeal the act of February 21 of the same year. Both laws went into force on the 24th day of July. On that day, at the same moment, they became laws of the State of Texas. The mandate of the State of Texas, taking effect, and therefore speaking legislatively, not from the date when it was passed by the legislature, but from the date when, under the constitution, it took effect, became law *eo instanti* with the act passed March 24, 1879. The two therefore are not in conflict; cannot be in conflict. Each is in force according to the fitness of its subject matter: one as regulating limited partnerships only; the other as applicable to assignments made by individuals, commercial partnerships and corporations.

III. But if otherwise, and this were a general partnership, W. T. Tuffly had no authority to make this assignment.

His sister, Mrs. Christine E. McLin, is not shown to have been absent or incapable of action, and the assignment itself, being an act out of the common course, not one for which the firm was formed, was not within the implied powers granted to Tuffly, as it certainly was not within the express powers which the articles of copartnership confer. *Moore* v. *Steele*, 67 Texas, 435; *Fore* v. *Hitson*, 70 Texas, 517; *In re Lawrence*, 5 Fed. Rep. 349; *Bank* v. *Carrollton Railroad*, 11 Wall. 624.

IV. The assignment did not purport to convey the firm property or the individual property of Mrs. McLin. Such assignment, made by an ordinary commercial partnership, and not including all the property of the assignors, both firm and

individual, was held by the Supreme Court of Texas to be void in *Donoho* v. *Fish*, 58 Texas, 164. See, also, *Coffin* v. *Douglass*, 61 Texas, 406.

V. The special partnership was invalid under the laws of Texas. Article 3442 of the Revised Statutes of Texas requires the special partner's contribution to be " in actual cash payments." In this case this was manifestly not complied with. The contribution of Mrs. McLin was simply of the amount which her deceased hus! and had owned in the copartnership. The court was requested to charge upon this subject, but refused to give the charge, and the defendants excepted. This charge is long; but it includes nothing which breaks its force or would justify the claim that any part of it might be properly refused because too extensive, and not merely limited to the point now in question. [It will be found in the margin.[1]]

---

[1] " It is claimed by the plaintiff, Louis Tuffly, that the copartnership or the firm of W. T. Tuffly was a limited partnership composed of W. T. Tuffly as general partner, and Christine E. McLin as special partner. It is claimed by defendants that Tuffly and said Christine E. McLin were both general partners, and that said Christine E. McLin was a general and not a special partner, for the reason, among others alleged by them, that she did not comply with the requirements of the law governing limited partnerships.

" On this question you are instructed that limited partnerships may consist of one or more persons who shall be called the general partners, and of one or more persons who shall contribute in actual cash payments a specific sum as capital to the common stock, who shall be called special partners. They are also required to make and severally sign a certificate, which, among other things, shall contain the amount of capital which each special partner shall have contributed to the common stock.

" This certificate, after having been acknowledged by the parties in the same manner as conveyances of land are acknowledged, shall be filed in the office of the clerk of the county court of the county in which the principal place of business of the partnership shall be situated. At or before the time of filing this certificate the sum specified in the certificate to have been contributed by the special partner in the common stock must have been actually and in good faith paid in cash; and if this is not so actually and in good faith paid in cash at or before said filing, then all persons interested in such partnership shall be liable for all the engagements thereof as general partners, and no payment into the fund thereafter by the special partner can relieve him from the consequences of failure to pay within the

The last sentence of this charge is justified and required by *Donoho* v. *Fish*, 58 Texas, 164, *Coffin* v. *Douglass*, 61 Texas, 406, and *Shoe Company* v. *Ferrell*, 68 Texas, 638.

VI. Other unlawful preferences were created by this assignment: (1) To Mrs. McLin for borrowed money, $7798; (2) If it is to be treated as an assignment by the special partnership and the individual jointly, it is a conveyance which makes hotch-potch of the partnership and individual property, and appropriates them ratably to the partnership and individual creditors, contrary to law. Such attempt is void. If successful it would establish preference of the individual creditors. But this would render the whole assignment void. *Converse* v. *McKee*, 14 Texas, 20; *Rogers* v. *Nichols*, 20 Texas, 719; *Warren* v. *Wallis*, 38 Texas, 225; *De Forest* v. *Miller*, 42 Texas, 34.

VII. The limited partnership was not perfected by publication according to law.

*Mr. W. C. Oliver* for defendant in error.

---

time above specified; so also the sum to be contributed by the special partner must have been actually and in good faith paid in cash, and cannot be contributed in property of any kind, however valuable it may be. If the proof shows you that Mrs. McLin's deceased husband, R. W. McLin, had a net interest, at or about the time of his death, in the firm of R. W. McLin & Co., and that, in consideration of the arrangement by W. T. Tuffly for full settlement of all claims against the said firm of R. W. McLin & Co. and the obtaining of a release of the estate of R. W. McLin from liability on account of the same, assigned and transferred to W. T. Tuffly all the goods, wares, and merchandise and other properties of said firm, and that the interest so conveyed constituted her contribution to the common stock to make her a special partner, then you are instructed that this would not be such contribution of actual cash as the law requires or contemplates, no matter what the outward form of the transaction was, and in such case Mrs. McLin would have thereupon become a general partner and liable as such, and no advance, loan, or payment thereafter made by her to W. T. Tuffly or to the firm would change her status from that of a general partner, and if you so find, then you are instructed that it was essential to the validity of the assignment that she should have joined in it and conveyed to the assignee her individual property not exempt, and that as she did not do so the assignment would be illegal and void, and that your verdict should be for the defendants."

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

1. We have seen that article 3460 of the Revised Statutes of Texas declares void, as against the creditors of a limited partnership, every sale, assignment or transfer of any of its property or effects, made when such partnership was insolvent or contemplated insolvency, and with the intent to give a preference of some over others of its creditors. The first proposition of the defendants is that the assignment to the plaintiff of March 23, 1885 — which was confessedly made by a partnership unable to meet its debts as they matured, and, therefore, insolvent, *Cunningham* v. *Norton*, 125 U. S. 77, 90 — was void, as giving a preference to consenting creditors over those who did not consent. This contention is based upon the assumption that the act of March 24, 1879, as amended by that of 1883, has no application to limited partnerships; in other words, insolvent individual debtors and insolvent general partnerships may, but insolvent limited partnerships cannot, assign their property for the benefit, primarily, of only such creditors as will consent to take their proportional share of the effects assigned, and discharge the assignor or assignors. The bare statement of this proposition suggests the inquiry, why should the legislature make any such discrimination against limited partnerships? The same considerations of public policy that require legislation under which an insolvent individual debtor and an insolvent general partnership may turn over their property to such creditors as will release their debts, would seem to have equal force in the case of limited partnerships that are insolvent or contemplate insolvency. Counsel for the defendants suggests that the reason for the discrimination — which, he insists, is made by the statutes of Texas — is, that the creditors of a limited partnership trust only the liability of the general partner, and the fund contributed by the special partner, and when they lose recourse upon that fund they have recourse only to the liability of the general partner. We do not perceive, in this statement of the relations between a limited partnership and its credi-

tors, any just ground upon which to rest the supposed discrimination.

The argument; that the statutes of 1879 and 1883 have no application to limited partnerships, is based upon these propositions: That those enactments do not, in terms, repeal or modify article 3460 of the Revised Civil Statutes; that repeals by implication merely are not favored; that article 3460 constitutes a part of a title in the revision, which relates — as did the act of 1846, from which it was taken — exclusively to limited partnerships; and as the recent statutes do not, in terms, refer to limited partnerships, the duty of the court is to so construe the earlier and later statutes as, if possible, to give full effect to each according to the reasonable import of its words; a result, it is contended, that cannot be attained, unless the acts of 1879 and 1883 are interpreted as not embracing assignments by limited partnerships.

We have not been referred to any decision of the Supreme Court of Texas sustaining this view, and we cannot adopt any such interpretation. The recent enactments cover, substantially, the whole subject of assignments by insolvent debtors for the benefit of their creditors. The first section of the act of 1879 provides, as we have seen, that every assignment by an insolvent debtor, for the benefit of his creditors, shall provide for the distribution of all his real and personal estate, other than that exempted from execution, among all of his creditors, and, however made or expressed, the assignment shall have the effect, and be construed, to pass all such estate. This accomplishes all and more than was accomplished by article 3460 of the Revised Statutes. Will it be contended that this section applies only to assignments by individual debtors, and by general partnerships, and not to assignments by limited partnerships? That section, in terms, embraces "every assignment" by insolvent debtors for the benefit of their creditors. And the third section, enabling the debtor to surrender his estate for the exclusive benefit of creditors who will take their proportional share, and discharge him, embraces the case of "any debtor" who is insolvent or contemplates insolvency. The object of the act of 1879 was to encourage

insolvent debtors to make an assignment of their property for the benefit of creditors. *Cunningham* v. *Norton*, 125 U. S. 77, 81. It establishes a complete system for the administration of the estates of insolvent debtors conveyed for the benefit of creditors; and the mere fact that it does not, in terms, modify article 3460 of the Revised Statutes, or the section of the same purport in the act of 1846, will not justify the courts in excepting from its operation the cases of debtors constituting a limited partnership, and including within its provisions, debtors constituting a general partnership. The special object of its third section was to open the way for the discharge of insolvent persons from their debts. Creditors who would not consent to their discharge were left to stand upon their rights, and take the chance of collecting their debts in full, if the debtor got upon his feet, and was fortunate enough to acquire other property. The statute is remedial in its character and should be liberally construed so as to give effect to the legislative will. And while it is true that repeals by implication are not favored by the courts, it is settled that, without express words of repeal, a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject embraced by both, and to prescribe the only rules in respect to that subject that are to govern. *United States* v. *Tynen*, 11 Wall. 88, 95; *Cook County National Bank* v. *United States*, 107 U. S. 445, 451. We are of opinion, therefore, that in so far as article 3460 forbids a limited partnership, when it is insolvent or contemplates insolvency, from making an assignment of its property for the benefit only of such creditors as will accept their proportional share of the proceeds of the effects assigned, and discharge their claims — the share received being sufficient to pay one-third of the debts of the consenting creditors — it is modified by the act of 1879, as amended by that of 1883.

2. If in error upon this point, the defendants contend that Tuffly had no authority in his own name to execute an assignment of the firm's property for the benefit of creditors; it not appearing that Mrs. McLin was absent, or incapable of acting in the matter, and the assignment being out of the common

course. While there is some conflict in the adjudged cases as to the circumstances under which one partner may assign the entire effects of his firm for the benefit of creditors, the Supreme Court of Texas, in *Graves* v. *Hall*, 32 Texas, 665, sustained the authority of one partner to make, in good faith, in the name of his firm, an assignment of the partnership property for the benefit of creditors. Besides, under the law of that State, in the case of limited partnerships, the general partners only are authorized to transact business and sign for the partnership, and bind the same, and suits in relation to the business of the partnership may be brought and conducted by and against the general partners, in the same manner as if there were no special partners. Rev. Stats. Texas, §§ 3444, 3445.

3. It is also contended that the assignment does not purport to convey the firm property or the individual property of Mrs. McLin, and was, for that reason, void under the decisions in *Donoho* v. *Fish*, 58 Texas, 164, and *Coffin* v. *Douglass*, 61 Texas, 406. In those cases it was held that an assignment by partners which did not purport to pass title to all the property owned by the partnership, and by the members thereof in their separate rights, and not exempted from forced sale, could not be sustained as a valid assignment under the act of March 24, 1879, and would interpose no obstacle to creditors collecting their debts by the usual process.

We do not assent to the defendants' interpretation of the assignment. It is inaptly expressed, but was intended to convey, and does convey, to the assignee all of the effects of the firm of "W. T. Tuffly," as well as the individual property of W. T. Tuffly. There was, it is true, proof tending to show that Mrs. McLin had individual property not exempt from execution, which was not embraced in the assignment. But the cases of *Donoho* v. *Fish* and *Coffin* v. *Douglass*, were not cases of limited partnerships, and do not decide that an assignment under the act of 1879 must embrace the individual property of a special partner. The statute authorizing the formation of limited partnerships exempts a special partner from liability for the debts of the partnership beyond the fund contributed

by him to the capital. The assignment in question covers the interest of Mrs. McLin as special partner, and need not have conveyed her individual property, which could not have been taken for the debts of the firm.

4. It is contended that an unlawful preference was given by the assignment in this: That Mrs. McLin was named in the schedule attached to the assignment as a creditor to the extent of $7798 for borrowed money. This, it is claimed, makes the assignment void under the provision that "in case of the insolvency or bankruptcy of the partnership, no special partner shall, under any circumstances, be allowed to claim as creditor until the claims of all other creditors of the parties shall be satisfied." Texas Civil Statutes, Art. 3463. We are of opinion that a deed of assignment, under the Texas statute, is not void because the verified schedule annexed to it may embrace a debt that cannot be paid ratably with the claims of other creditors. In *Fant* v. *Elsbury*, 68 Texas, 1, 8, 6, it was held that an assignment which on its face preferred some creditors over others, in violation of the 18th section of the act of 1879, was not, therefore, void. The court said: "By the express terms of that section the attempted preference and not the assignment is void. The estate is still administered under the act, and is distributed among all the creditors in proportion to their respective claims, notwithstanding the attempted preference." Again: "All that is necessary is, that the assignment be made for the benefit of creditors by an insolvent, or one contemplating insolvency, and the statute dictates everything requisite to be performed in order that the property conveyed may be distributed according to its own provisions, whether the assignor has so requested or not. Should the assignor prescribe a course to be pursued by the trustees different from that directed by the statute, his wishes would not be respected." See, also, *McCart* v. *Maddox*, 68 Texas, 456, to the same general effect.

5. It is contended that the publication of the notice of the formation of the partnership between Tuffly and Mrs. McLin was so defective that the partnership did not come into legal existence as a limited partnership. The certificate of partner-

ship contained, substantially, all that was required by article 3445. It was duly verified by the general partner and was duly registered in the proper office. The required certificate having been made, acknowledged, filed and recorded, and the required affidavit having been filed, the limited partnership was, under article 3449, to be deemed as formed. But article 3450 requires that the partners shall publish the terms of the partnership or registry in such newspaper as shall be designated by the clerk in whose office the registry shall be made, and if such publication be not made, the partnership shall be deemed general. Now, the point is made that the "terms" of the partnership were not set forth in the newspaper notice, and, consequently, the partnership was to be deemed general, in which event no valid assignment could be made, unless Mrs. McLin joined in it with Tuffly.

Precisely what the statute means by the "terms" of the partnership is not clear. The notice did state that W. T. Tuffly was the general partner, and Mrs. McLin the special partner, and that the latter had contributed to the common stock the sum of $6419.36. And it disclosed the fact that the certificate of the partnership had been executed and recorded. Without deciding whether the notice sufficiently disclosed the terms of the partnership, it is clear that the legal existence of the partnership did not depend upon the notice or its contents. The only effect of the failure to make the required publication was that "the partnership shall be deemed general." But that is immaterial in view of the finding of the jury in respect to certain facts, constituting an estoppel against the defendants, and which were submitted to them by the instructions. To these facts, and the instructions relating to them, we will next refer.

6. The jury were instructed: "If you shall find from the evidence that the limited partnership as stated and claimed by plaintiff was recognized as such in its inception by the three attaching creditors, defendants herein, and likewise during its existence was dealt with and credited as such by them, as well as sued therefor and its property attached as such after its assignment, and that its other creditors also treated and dealt

with it, and accepted its assignment to plaintiff as such, and that Mrs. McLin, named therein as the special or limited partner, and W. T. Tuffly, named therein as the general partner, and whose name constituted the firm name, always treated it as a special or limited partnership, and that Mrs. McLin loaned it money as claimed, and subsequently sued the plaintiff as its assignee therefor, then and in such case you likewise may deem the same a limited partnership and regard the assignment to plaintiff as valid.

"If you shall also find that the same was made at a time when the 'W. T. Tuffly' paper was maturing faster than it could be met in the ordinary and usual course of business, and that such assignment was made in good faith in contemplation of insolvency; and if you shall further find that the defendant Tracy, as United States marshal, seized the property so assigned, under and by virtue of the attachments of the three attachment creditors who have made themselves defendants herein, then you will find for the plaintiff herein as against defendant Tracy and the sureties on his official bond and the three firms of attaching creditors for the value of the goods as they were at the time and place of their seizure under such writs of attachment, such value to be ascertained from all the facts detailed in evidence before you.

"But if you shall otherwise find as to the facts constituting the rights of the parties as hereinbefore set forth, then and in such case your verdict will be for the defendants."

According to the bills of exceptions there was evidence tending to prove all the facts stated in these instructions. The attaching creditors, with other creditors, described them in the release executed by them at about the time of the formation of the limited partnership as constituting a limited partnership, in which W. T. Tuffly was the general, and Mrs. McLin the special, partner. If the attaching creditors thus recognized and dealt with W. T. Tuffly and Mrs. McLin as a limited partnership, they are estopped from insisting that there was no such partnership, or that the assignment was not valid as an assignment by a limited partnership. They cannot be permitted thereafter to raise the objection that the terms of

the partnership were not sufficiently stated in the published notice of its formation. Those terms were fully set forth in the recorded certificate of the partnership.

But as the defendants contended that their recognition of the limited partnership was in ignorance of material facts bearing upon that question, and therefore they were not estopped, the court, at their instance, further instructed the jury:

"If the proof shows you that Mrs. McLin never in fact contributed the amount to the common stock necessary to make her a special partner, or that she afterwards altered and diminished the amount of her capital stock, and that these facts, or either of them, were unknown to the attaching creditors, who are defendants herein, at the time they dealt with the firm and sued W. T. Tuffly, then you are instructed that neither the recognition and dealing by them with Tuffly and Mrs. McLin as a limited partnership, nor the suing of W. T. Tuffly in ignorance of said facts, estops or precludes them, or any of the defendants from showing that said partnership was never in fact legally formed as a limited partnership, for the reason above stated, nor from showing that it afterwards, by reason of the alteration and diminution of Mrs. McLin's capital stock, was rendered a general partnership."

This instruction gave the defendants the full benefit of all the facts upon which they could rely to defeat the estoppel referred to in the other instruction.

7. A considerable part of the discussion at the bar, and of the briefs of counsel, was directed to the question whether the court erred in refusing to give to the jury a certain charge which was prepared and submitted by the defendants. So much of that charge as constituted an argument rather than an instruction in behalf of the defendants may be omitted from this opinion. The material part of it was to the effect that if Mrs. McLin's husband had a net interest, at or about the time of his death, in the firm of R. W. McLin & Co., and that in consideration of the arrangement by W. T. Tuffly, for full settlement of all claims against the firm, and the obtaining of a release of R. W. McLin's estate from liability on ac-

count of the same, she assigned and transferred to W. T. Tuffly all the goods, wares, merchandise and other property of the firm, "and that the interest so conveyed constituted· her contribution to the common stock to make her a special partner, this would not be such contribution of actual cash as the law requires or contemplates, no matter what the outward form of the transaction was, and in such case Mrs. McLin would have thereupon become a general partner and liable as such, and no advance, loan or payment thereafter made by her to W. T. Tuffly or to the firm would change her status from that of a general partner, and if you so find, then you are instructed that it was essential to the validity of the assignment that she should have joined in it and conveyed to the assignee her individual property not exempt, and that as she did not do so the assignment would be illegal and void, and that your verdict should be for the defendants."

We shall not extend this opinion by a discussion of the several propositions embodied in this instruction. It is sufficient to say: 1, The issues as to whether Mrs. McLin made the contribution to the common stock necessary to make her a special partner, or whether there was an alteration or diminution of her capital stock, were fairly submitted to the jury in the instruction that the court gave at the instance of the defendants; 2, The instruction now in question was in conflict with the first one given by the court upon its own motion; if given, it might have resulted in a verdict for the defendants, although the jury may have found that the partnership between Tuffly and Mrs. McLin was recognized by the attaching and other creditors, in its inception, and was dealt with by all of them during its existence, as a limited partnership, in which Mrs. McLin was known by them to be the special partner, and W. T. Tuffly the general partner.

Many other instructions were asked by the defendants which the court refused to grant. But it is unnecessary to discuss them, as what has been said is sufficient to indicate our opinion touching the essential issues in the case.

Upon the whole case we are of opinion that no error was committed by the court below, and the judgment must be

*Affirmed.*